# State of Vermont v. Frank Barrett, Jr.

[320 A.2d 621]

No. 83-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 2, 1974

Motion for Reargument Denied June 4, 1974

*Robert W. Gagnon,* State's Attorney, and *Robert M. Paolini,* Deputy State's Attorney, for the State.

*Richard E. Davis Associates,* Barre, for Defendant.

**Barney, J.** The defendant was found guilty by a jury of knowingly possessing a regulated drug. The case had proceeded to trial after a hearing on the defendant's motion to suppress certain evidence. The motion was denied and is one of the issues raised on the appeal. After the trial, two further motions were filed, one in arrest of judgment or for a new trial based on an allegedly prejudicial juror; and another for a new trial based on newly discovered evidence. Both motions were denied, and the motion for a new trial based on newly discovered evidence was remanded from this Court for hearing and findings which were accomplished. The motion was then again denied, and all these issues are now here.

A recital of the facts developed by the evidence is important to an understanding of the issues. There is a so-called informant involved. This person and a police officer went to the office of the state's attorney on a particular morning. The informer was searched at the police department. He was then given five dollars and driven by a detective to Elm Street in the city of Barre and instructed to go to the apartment occupied by the defendant and one Linda Thow at 114 Elm Street. He returned in a few minutes and gave the detective something that was established to be lysergic acid diethylamide, or LSD. As a result of that transaction, a search warrant was obtained and executed.

As a consequence of the search, hypodermic needles and syringes and quantities of LSD were found. On this basis, the defendant was charged with knowingly and unlawfully

possessing a regulated drug, in violation of 18 V.S.A. § 4224(d)(4). At the hearing on the motion to suppress, the defendant sought to obtain the name of the informant, but the trial court upheld the state's objection. The sufficiency of the warrant was upheld and the motion to suppress denied.

At the trial the informant was called as a witness by the defendant, who elicited testimony that the informer had had a case against him disposed of through an arrangement made with the state's attorney's office. The other witness called by the defense was Linda Thow, who testified that the night before the search there were no drugs in the place they were found at the time of the search. The presence of LSD in brown coin envelopes at the time of the search was not otherwise contested.

After the verdict, the respondent sought a new trial on the basis that the foreman of the jury, according to the *voir dire* taken in a trial one month after this case, stated he believed a respondent guilty until proven innocent. This motion was denied after hearing. The respondent also sought a new trial based on a letter allegedly written by the informer in the presence of Linda Thow, subsequent to the jury verdict in this case. The letter purportedly sets out facts different than the facts to which the informer testified at the jury trial, and, the defendant claims that it indicates that the informer, rather than the defendant, was the guilty person.

A hearing was held at which time the informer testified that, although the signature was probably his, he had no independent recollection of any events surrounding the writing or signing of the letter. The trial court found the letter unreliable and lacking in probative value, and the supporting testimony unworthy of credit. Subsequently, findings were made and conclusions reached whereafter the motion for a new trial based on the evidence was denied.

■ Almost all of the issues revolve around the informer. Turning first to the claim of prejudice based on the failure of the trial court to allow disclosure, although the informant was called as a witness during the trial by the defendant, he was never officially conceded to be, or identified as, the informer by the prosecution. All attempts to do so by the

defendant were objected to by the state and sustained by the trial court.

The defendant bases his first claim of error on two propositions. Both are mistaken. The first asserts that the informant was an eyewitness to the crime. This is not so. The crime charged was possession of a regulated drug and stemmed from the material found under a search warrant. The informer was not present.

The second claim of error is that there was some issue of entrapment. There is simply nothing in the evidence that indicates any police activity or action by the informer inducing the defendant to "possess" regulated drugs. In argument the defendant has, from time to time, claimed that the evidence was "planted", but there is simply nothing in the evidence to give such a claim any weight. The defendant chose not to take the stand in the face of evidence from the state that at the time of the search he acknowledged ownership of the seized material that justified the criminal charge.

Thus it appears there is no adequate justification for requiring disclosure of the identity of the informer, as defined in *Roviaro* v. *United States,* 353 U.S. 53 (1957); and *McCray* v. *Illinois,* 386 U.S. 300 (1967). Additionally, as is pointed out in *Stanley* v. *State,* 313 A.2d 847, 864 (Md. Ct.Sp.App. 1974), with the informer actually present and testifying, insofar as that testimony was desired by the defense, it was entirely available.

The *Stanley* case, *supra,* a scholarly opinion by Judge Charles E. Moylan, Jr., of the Maryland Court of Special Appeals, is especially helpful in the issues relating to the search warrant. Judge Moylan carefully delineates the constitutional requirements for search warrants more or less obscurely outlined by *Aguilar* v. *Texas,* 378 U.S. 108 (1964), and redefined by *Spinelli* v. *United States,* 393 U.S. 410 (1969). His analysis of the so-called *"Aguilar* test" is found by this Court to be a most accurate categorization thereof and will be resorted to in deciding this case.

It is the complaint of the defendant that the state failed to establish the reliability of the informer, and that therefore the trial judge should have granted his motion to sup-

press. He argues that here, too, he should have been allowed to have the informer identified so that he might establish his unreliability by examination.

The concept supporting the search warrant is probable cause, in this case, to believe that certain property evidencing criminal conduct was present at the described premise. The judgment must be made by the appropriate judicial officer as an independent and detached magistrate. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 449 (1971). Most of the problems revolve around what sort of presentation is sufficient to support the action of such a magistrate in issuing the search warrant.

The *Aguilar* case, *supra,* is usually described as having a two-pronged test. But it is important to keep in mind what is being tested. The concern is for hearsay. If an affiant comes before a magistrate and is able to present a statement supporting probable cause entirely from his own first-hand knowledge, these *Aguilar* and *Spinelli* considerations do not apply. It is the recitations of a third party to the affiant that produces the hearsay.

A clear understanding of that concern is essential in this case. The only unobserved activity by the informer here occurred when he left his police escort to enter the premises later searched, and returned. He entered those premises after having been searched for drugs and with money in hand to buy drugs. He returned in a few minutes with two tablets of LSD. He stated that he bought the drugs from the occupants of the apartment and that there were other supplies of LSD in the apartment.

The "*Aguilar* tests" have been variously described, but the most lucid is found in the *Stanley* case, *supra.* There is initially the "basis of knowledge" test. It is not concerned with the integrity or veracity of the informant, but with the actual source of the information from which the magistrate is to be drawing his conclusion as to probable cause. Is it the direct sensory perception of the informer, or is he merely repeating someone else's conclusion? To pass muster, the informant must transmit the factual basis for the conclusions, so that the magistrate may make his own direct analysis. *Stanley* v. *State, supra,* 313 A.2d at 858.

■ This case gives no problem in that regard, since the informer's report to the affiant concerns first-hand experience. The critical issue is derived from the second *Aguilar* test concerning "veracity". The test of "veracity" in this connection can be met in one of two ways. First, by proof of the inherent credibility of the informer himself, which must be demonstrated; or, second, by the presence of factors reasonably demonstrating the "reliability" of the information furnished by the informer. See *State* v. *Nickerson*, 114 N.H. —, 314 A.2d 648, 650 (1974). Note that under this rule it is possible for an "unreliable" informer, that is one of poor credibility, to give "reliable" information. Thus the question is whether there is a demonstration of facts and circumstances indicating that the information given is probably true, whatever the credibility of the informer may be otherwise.

■ The purpose of the search of the informer and his being escorted to the place of purchase was to eliminate both as much as possible of the hearsay aspects of the search warrant request and to reduce the reliance on "veracity" to a minimum. The magistrate had enough facts to support a finding of probable cause, and had them in a form which rendered extended evaluation of the informant's credibility unnecessary. The motion to suppress was properly denied.

The informant plays a part in the next issue, also. About ten days after the verdict of guilty was returned in this case, the informer visited the defendant's apartment. While there he is alleged to have written a statement saying that he planted the LSD that was found in the apartment. This statement was made the subject of a motion for a new trial. A hearing was ordered, and the informant summoned to testify. On the stand he claimed no memory of writing out any such statement, but stated it did appear to be his handwriting. He also testified as to loss of memory concerning his trip to the apartment to buy drugs. He asserts the lack of memory was due to head injuries and repeated drug use. Because of various other proceedings, two years had elapsed between the trial and the time of this testimony.

■ In view of the evidence, the trial court refused to find the statement of probative value and rejected the testimony of supporting witnesses as not credible. Based on those

findings, the trial court rejected the motion for a new trial on that ground. These judgments as to credibility and fact-finding are entirely for the lower court, to be sustained unless unsupported by the record. *In re: Hatch,* 130 Vt. 248, 258, 290 A.2d 180 (1972); *Everlasting Memorial Works* v. *Huyck Monument Works,* 128 Vt. 103, 109, 258 A.2d 845 (1969). This is dispositive of the issue, over and above the considerations that the witness was available and testified under oath at trial as the defendant's witness.

The defendant also moved for a new trial on the basis of a claim that one of the jurors mistook the law. It appears that this juror served in another trial at some later time. It was claimed that during the *voir dire* on that case the juror stated his belief to be that the accused must prove himself innocent. From this one statement, the defendant argues that the juror must have misconstrued the law in his own case one month previously. He acknowledges that the jury was adequately instructed in his own case as to the presumption of innocence favoring the defendant.

We must assume that the jurors followed the instructions given them by the trial court. *Mainieri* v. *McLellan,* 125 Vt. 157, 211 A.2d 239 (1965). Absent any objective evidence of misconduct in the case at hand, the sanctity of the jury system requires that no inquiry be made, after verdict, into the beliefs and motivation of the jurors. *Bellows Falls* v. *State Highway Board,* 123 Vt. 408, 412, 190 A.2d 695 (1963). To hold otherwise would be to expose the jury system to improper pressures and render valid verdicts subject to attack and unjustified impeachment. The lower court correctly denied this motion.

Other issues raised by the defendant are disposed of by our ruling sustaining the denial of the motion to suppress and justify no further treatment here.

*The rulings of the lower court on the motions presented are sustained and the judgment of conviction is affirmed. Let execution be done.*

### On Motion To Reargue

**Barney, C.J.** As so frequently happens, the defendant seeks to reargue on a point not raised below on the motion to sup-

press. However, since an aspect of the reliability of the informer was argued there and presented on appeal, we will indicate why the present contention is substantively unsound.

The defendant's concern heretofore emphasized matter justifying the disclosure of the informant's identity. As we pointed out in the opinion, this issue was effectively negatived with the informer actually present and testifying.

Reaching back to the initial appearance before the magistrate with respect to the issuance of the search warrant, we will now view the application without regard to evidence or information outside its four corners. It must be said, however, that the record suggests quite plainly that other information in the possession of the officer was inquired of. This issue was not pursued at the suppression hearing, and we have recently advised applicants for warrants and magistrates to make a record of what additional facts are furnished at the time of issuance. *State* v. *Rocheleau*, 131 Vt. 563, 568, 313 A.2d 33 (1973).

In contrast to that case, however, this application adequately sets out the probability of criminal activity. The challenged issue relates to the recitation by the police officer that this informant had given reliable information in the past, particularly relating it to a specific case and individual and his subsequent arrest on a drug charge. Taking this assertion, together with the total content of the information given on the affidavit, no constitutional defect in the issuance of the search warrant by the magistrate in this case has been made to appear, even on this ground. No basis for further argument has been shown.

*Motion for reargument denied; let full entry go down.*