**STATE of Delaware, Plaintiff,**

v.

**John E. WALKER and Tina Mae Thoroughgood, Defendants.**

Superior Court of Delaware, Sussex County.

Submitted Dec. 16, 1981.

Decided Feb. 5, 1982.

John M. Sandy, of Dept. of Justice, Georgetown, for plaintiff.

Larry W. Fifer, of Schmittinger & Rodriguez, Rehoboth Beach, for defendants.

## OPINION

TEASE, Judge.

Defendants have moved to suppress evidence seized by police on February 16, 1981, pursuant to a search warrant issued by Magistrate A. F. Truitt at Justice of the Peace Court No. 3 in Georgetown, Delaware.

On February 16, 1981, Patrolman First Class Michael Corbin and Patrolman Harry Miller of the Rehoboth Beach Police Department applied for a search warrant from Magistrate Truitt at Justice of the Peace Court No. 3 in Georgetown. A probable cause determination was made and the warrant was issued. It provided for the search of a garage apartment located at 31 Pine Reach, Henlopen Acres, Delaware, a 1975 Chevrolet van, Delaware registration no. C10126, and a 1968 Chevrolet four door sedan, Delaware registration no. 151681.

The police officers proceeded to Henlopen Acres where they encountered defendants riding in their car. They stopped them, showed them the warrant and followed them to the apartment at 31 Pine Reach. At some point either before or during the search of the premises Trooper Robert Truitt of the Delaware State Police arrived on the scene to assist. The search resulted in the seizure of numerous items, including a substance believed to be marijuana, drug paraphernalia, and a .22 caliber handgun.

The defendants were arrested and field tests were performed on the suspect substances. The tests yielded positive and defendants were taken to a holding cell at the Rehoboth Beach Police Department and, subsequently, to Justice of the Peace Court No. 3 in Georgetown.

A Sussex County Grand Jury returned an indictment against defendant Walker charging him with conspiracy in the second degree, possession of marijuana with intent to deliver, maintaining a dwelling house for the purpose of keeping and/or delivering controlled substances, and possession of a deadly weapon during the commission of a felony. Codefendant Thoroughgood was charged by the same indictment with conspiracy in the second degree and possession of marijuana with intent to deliver. Both defendants were bound over for trial.

## I. TERRITORIAL JURISDICTION

Initially, defendants contend that the affiants (Officers Corbin and Miller) misrepresented to the Magistrate that the residence and vehicles to be searched were located within the jurisdiction of Rehoboth Beach, while in fact they were located in the separate municipality of Henlopen Acres.

The evidence fails to bear out this contention. Affiants made no affirmative misrepresentations regarding the location of the premises and vehicles to be searched. It is also clear that affiants properly sought the search warrant from J. P. Court No. 3 in Georgetown, since the closer J. P. Court outside of Rehoboth Beach was closed in observance of Washington's Birthday.

Defendants also argue that although Rehoboth Beach police officers may exercise their authority up to one mile outside the town limits, in accordance with 54 *Del. Laws* Ch. 197 § 21(b), that authority may not extend into the separate municipality of Henlopen Acres. No support has been provided for this interpretation by defendants. Since the town of Henlopen Acres has chosen not to establish its own police force it seems appropriate that Rehoboth Beach po-

lice officers be permitted to exercise their authority within Henlopen Acres as long as it is exercised in accordance with the one-mile limitation provided in the Rehoboth Beach Charter. An additional ground for permitting the search in Henlopen Acres is that Officer Corbin, as a member of the Governor's Strike Force, has been authorized by the Attorney General, pursuant to 29 *Del.C.* § 2516, to have statewide police, arrest and enforcement power. Therefore, Patrolman First Class Corbin was authorized to seek a search warrant in Georgetown and conduct the subsequent search at 31 Pine Reach, Henlopen Acres.

## II.  PROBABLE CAUSE

■ The Fourth Amendment to the *United States Constitution* and Article I, Section 6, of the *Delaware Constitution* require that in order for a search warrant to be issued probable cause for its issuance must first be established. It is axiomatic that an application for a search warrant must be supported by a sworn affidavit that on its face shows facts constituting probable cause to search. *Sexton v. State,* Del.Supr., 397 A.2d 540 (1979).

■ Probable cause exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient to warrant a person of reasonable caution to believe that seizable property would be found in a particular place or on a particular person. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1924); *Wilson v. State,* Del.Supr., 314 A.2d 905, 906 (1973).

The United States Supreme Court has developed several presumptions with which the reviewing courts are directed to approach probable cause examinations. *United States v. McNally,* 3d Cir., 473 F.2d 934, 937 (1973); *United States v. West,* D.Del., 508 F.Supp. 1028, 1031–32 (1981). Only the probability, and not a prima facie showing, of criminal conduct is necessary to support a finding of probable cause. *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); *Beck v.*

*Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964). Although the allegations of an affidavit must rise above mere suspicion, they need not constitute clear evidence which would justify conviction. *Jones v. United States,* 362 U.S. 257, 270, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960); *Brineger v. United States,* 338 U.S. 160, 172–73, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879 (1949). Affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial. *Spinelli v. United States,* 393 U.S. at 419, 89 S.Ct. at 590. Magistrates and courts must test and interpret affidavits in a common sense and realistic way rather than in a hypertechnical fashion. *United States v. Ventresca,* 380 U.S. 102, 108–09, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965). Reviewing courts should pay great deference to the determination of probable cause made by the issuing magistrate. *Spinelli v. United States,* 393 U.S. at 419, 89 S.Ct. at 590; *Jones v. United States,* 362 U.S. at 270–71, 80 S.Ct. at 735–36. Finally, the resolution of doubtful or marginal cases should be determined largely by according preference to issued warrants. *United States v. Ventresca,* 380 U.S. at 109, 85 S.Ct. at 746.

The problem of determining whether probable cause to issue a warrant exists is increased when, as here, the affiant has obtained much of his information through an informant or informants. In *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court established the basic standards by which affidavits based on hearsay information provided by informants are to be evaluated. The Court held:

> Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant ... the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed ...

was "credible" or his information "reliable." Otherwise, "the inferences from the facts which lead to the complaint" will be drawn not "by a neutral and detached magistrate," as the Constitution requires, but instead, by a police officer "engaged in the often competitive enterprise of ferreting out crime," ... or, as in this case, by an unidentified informant. *Id.* at 114–15, 84 S.Ct. at 1513–14 (citations omitted).

█ Thus, an affidavit must set forth facts which enable the magistrate to judge for himself both the basis of knowledge of the informant (requiring an examination into the manner in which the informant obtained his information) and the veracity of the informant (requiring a determination that the informant is credible or that his information is reliable).[1]

█ Under the "basis of knowledge" prong facts must be revealed in the affidavit which allow the magistrate to independently determine whether the informant had a proper basis for his allegation that a certain person had been, was or would be involved in criminal activity or that evidence of crime could be found at a certain place. See W. R. LaFave, 1 *Search and Seizure, A Treatise on the Fourth Amendment* § 3.3(d) (1978). The information furnished must be sufficient to assure the magistrate "that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States*, 393 U.S. at 416, 89 S.Ct. at 589. The preferable method of satisfying the "basis of knowledge" prong is through personal observation by the informant and/or his participation in the reported criminal activity. See *Id.* at 425, 89 S.Ct. at 593 (White, J., concurring); *State v. Poli*, 390 A.2d at 419 (1978).

█ The second or "veracity" prong of the *Aguilar* test may be satisfied by any of several judicially-recognized methods. The most direct method is for the affiant to assert that the informant has provided information that has been verified in the past. *Sexton v. State*, 397 A.2d at 546. When there has been no assertion by the affiant that the informant has previously provided verified information, his credibility or the reliability of his information may still be shown if the affidavit contains other information within the affiant's knowledge to corroborate the tip. As the Court stated in *Spinelli*:

> If the tip is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standard enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration? ... A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which—even when partially corroborated—is not as reliable as one which passes *Aguilar's* requirements when standing alone.

393 U.S. at 415–16, 89 S.Ct. at 588–89.

Independent police verification as a result of their own investigation is often used as a means of validating tips which standing alone would be insufficient to establish the informant's credibility or the informations reliability. See e.g., *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

It has also been held, in cases where information is provided by more than one

---

1. The Delaware Supreme Court has applied the *Aguilar* "two-pronged test" in several instances in order to ascertain the sufficiency of affidavits based at least in part on informants' tips. See e.g., *Carter v. State*, Del.Supr., 418 A.2d 989 (1980); *Sexton v. State*, Del.Supr., 397 A.2d 540, 546 (1979); *State v. Poli*, Del.Supr.,

390 A.2d 415 (1978); *State v. Ramirez*, Del.Super., 351 A.2d 566 (1976); *Schramm v. State*, Del.Supr., 366 A.2d 1185 (1976); *Shantz v. State*, Del.Supr., 344 A.2d 245 (1975); *Garner v. State*, Del.Supr., 314 A.2d 908 (1973); *Wilson v. State*, Del.Supr., 314 A.2d 905 (1973).

informant, that if the tips substantially corroborate each other that factor also helps to establish the reliability of the information. *United States v. Martin*, 5th Cir., 615 F. 318, 326 (1980); *See also, United States v. West*, 508 F.Supp. at 738 (1970).

Finally, in *Spinelli*, the Court makes clear that even if an informant's tip fails to satisfy the *Aguilar* tests it may still be considered in establishing probable cause if there are other indicia of criminal activity in the affidavit.

> We conclude, then, that in the present case the informant's tip—even when corroborated to the extent indicated—was not sufficient to provide the basis for a finding of probable cause. *This is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination.* Rather, it needed some further support. When we look to other parts of the application, however, we find nothing alleged which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed.

393 U.S. at 418–19, 89 S.Ct. at 590 (emphasis added).

Having set forth in some detail the legal principles and analytical framework by which an affidavit in support of a search warrant must be measured, I now address the affidavit at issue and the allegations contained therein, in order to determine whether they are sufficient to establish probable cause. Initially, it should be noted that the affidavit as drafted is unnecessarily abstruse. Many of the difficulties encountered with the affidavit are likely to have never arisen had a more careful job of draftmanship been performed. It appears that four different undisclosed informants provided information used in the affidavit.[2] Three informants provided tips to the affiants while the other is stated to have participated in a controlled buy in which he is reported to have purchased a controlled

substance from defendants' residence at 31 Pine Reach, Henlopen Acres.

Defendants contend that the affidavit, based in large part on the information provided by these informants, is insufficient to support the Magistrate's finding of probable cause. They have, however, founded their argument on a faulty premise. *Tackett v. State*, Del.Supr., 416 A.2d 1225 (1980) is cited as authority for the proposition that those allegations based on information provided by informants which fail to satisfy the *Aguilar* tests must be excised from the affidavit and cannot be considered by the Magistrate in making a probable cause determination. Defendants argue that when the insufficient allegations are excised from the affidavit, the allegations which remain are clearly insufficient to support a finding of probable cause.

Defendants have misinterpreted the holding in the *Tackett* case. It merely held, under the authority of *Franks v. State*, Del.Supr., 398 A.2d 783 (1979), that the affidavit at issue contained sufficient uncontested information to support a finding of probable cause even when certain challenged portions were excised. The reason that *Tackett* and *Franks* are clearly distinguishable from the present case is because in those cases the defendants were basing their challenges to the sufficiency of the affidavits on the contention that false statements were knowingly and intentionally, or recklessly included in the warrant application. Both of the above decisions are themselves based on the decision of the United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). There it was held that a search warrant must be voided if false statements made by the affiant in the affidavit are shown to have been made knowingly, and intentionally, or with reckless disregard for the truth, and if, setting aside the false material, the affidavit's remaining content is insufficient to establish probable cause.

---

**2.** Since it is not the number of informants, but their knowledge and veracity and the information itself which are essential in establishing probable cause, the fact that the exact number of informants providing information is unclear is not of critical importance in determining whether probable cause to issue the warrant existed.

In the present case defendants have not alleged that false statements were intentionally, knowingly or recklessly included in the affidavit by the affiants. Therefore, it is clear that the holdings in *Tackett* and *Franks* are inapplicable. They provide no support for defendants' contention that portions of an affidavit challenged as being insufficient under *Aguilar* must be excised and that only uncontested information contained in the affidavit may be considered by a magistrate in making a probable cause determination. As previously stated, informants' tips which fail to satisfy the *Aguilar* standards may still be considered together with other corroborative evidence contained in the affidavit.

In addressing the specific allegations contained in the affidavit at issue, it is quite likely that none of the information provided by the informants, when considered individually, would be sufficient to establish probable cause for the issuance of a search warrant for defendants' apartment and vehicles. Clearly, the information provided by the first and second informants, set out in the third and fourth paragraphs of the affidavit, fails to meet the *Aguilar* standards.

Paragraph 3 provides that on February 14, 1981, a "confidential informant" told affiant that he could purchase drugs from defendant Walker's residence at 31 Pine Reach, Henlopen Acres. This allegation is purely conclusory. It leaves undisclosed the basis of the informant's knowledge and provides nothing from which the Magistrate could make an independent determination that the informant was credible or his information reliable. It must be regarded as nothing more substantial than "a casual rumor circulating in the underworld or an accusation based on the defendant's reputation".

Paragraph 4 contains the allegation of another "reliable confidential informant" that at the time he spoke with affiant, February 10, 1981, he could purchase drugs from defendant Walker "who frequently sells drugs in the Rehoboth area", and that he had "in the past" purchased drugs from Walker. While this allegation provides more information than did the previous one, it is still insufficient to satisfy the *Aguilar* standards. The informant, by stating that he had purchased drugs from defendant Walker in the past, established that his basis of knowledge concerning defendant's participation in drug transactions came from his personal criminal involvement. This statement may also be construed as a declaration against penal interest by the informant. The Delaware Supreme Court has expressly held that, under the authority of *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), admissions against penal interest may be considered as corroborative evidence in establishing the credibility of an informant. As such, they may only provide an additional basis for crediting an informant's tip and cannot by themselves establish an informant's credibility. *Wilson v. State*, 314 A.2d at 908. This allegation contains no other information which can be considered in establishing the informant's credibility or his information's reliability. There are no specific details concerning the times, places and circumstances surrounding the informant's claim that he had previously bought drugs from defendant Walker. As a result, informant's naked allegation, even though an admission against his penal interest, is insufficient to establish his credibility. Still another ground rendering the allegations contained in paragraph 4 insufficient to satisfy the requirements of *Aguilar* is that the information must be deemed stale. Probable cause has to exist to believe that the specified items sought are presently on the premises, and clearly the passage of time lessens that probability. Here since the Magistrate could not even determine when the informant acquired his information it must be deemed stale and stale information will not support a finding of probable cause. *Pierson v. State*, Del.Supr., 338 A.2d 571, 573 (1975). Finally, there are no allegations in paragraph 4 which would lead a neutral and detached magistrate reasonably to conclude that evidence of criminal activity would be found at any of the locations for which the search warrant was

sought. This is because it is only alleged that the defendant "frequently sells drugs in the Rehoboth area." For all of these reasons the information provided by the second informant is clearly insufficient to establish probable cause for issuance of the search warrant.

It is alleged in the eighth and ninth paragraphs of the affidavit that during the week of February 15, 1981, a third "confidential informant" made a purchase of methamphetamine at defendants' residence under a "controlled situation." It is stated "that subject had been given a sum of money for the purchase of a drug. Above confidential informant then left residence shortly after entering and gave . . . affiant a drug which he stated had been purchased at the residence."

Defendants maintain that because the statement concerning the controlled buy does not allege that the informant was searched by affiant prior to his entry into defendants' apartment the controls were inadequate to support a determination of probable cause to search the premises.

Several well reasoned opinions have held that when controls are adequate, affiant's personal observation of a controlled buy may suffice as ground for a finding of probable cause, absent having established the credibility of the informant. *See e.g., Hignut v. State*, Md.Ct.Spec.App., 17 Md. App. 399, 303 A.2d 173 (1973); *Mills v. State*, Ind.Ct.App., 379 N.E.2d 1023 (1978). In cases in which controls are adequate, it is affiant's personal observations, rather than any hearsay information supplied by the informant, that provide the basis for the magistrate's finding of probable cause. Therefore, the *Aguilar* two-prong test is inapplicable. The question, here, however, is whether the controls were adequate so as to render an evaluation of the informant and his information under *Aguilar* unnecessary. A "controlled purchase" has been

defined as "providing money to a buyer, who is searched before and after making contact with the seller," and "[i]t also involves police surveillance of as much of the transaction between buyer and seller as possible." *State v. Hawkins*, Minn.Supr., 278 N.W.2d 750, 751 (1979). In *State v. Barrett*, Vt.Supr., 132 Vt. 369, 320 A.2d 621, 625 (1974), the Court explained:

The purpose of the search of the informer and his being escorted to the place of purchase was to eliminate both as much as possible of the hearsay aspects of the search warrant request and to reduce the reliance on "veracity" to a minimum. The magistrate had enough facts to support a finding of probable cause, and had them in a form which rendered extended evaluation of the informant's credibility unnecessary.

While it seems that searching the informant both before and after the buy *and* stating that fact in the affidavit should be deemed essential in establishing probable cause, it has been expressly held that the failure to conduct a prior search of the informant does not necessarily prevent a magistrate from determining that probable cause exists. See *United States v. Fluker*, 9th Cir., 543 F.2d 709, 714 (1976); *State v. McLeod*, N.C.Ct.App., 36 N.C.App. 469, 244 S.E.2d 716, 720 (1978), petition for review denied N.C.Supr., 295 N.C. 555, 248 S.E.2d 733 (1978).[3]

While I would have strong reservations about concluding that the personal observations of the affiant, in the present case, are sufficient in themselves to establish probable cause to search defendants' residence, I do believe that they raise a very strong suspicion which, when considered together with other corroborative evidence in the affidavit, is adequate to establish probable cause for the issuance of the warrant to search defendants' apartment. *Cf., Ker v.*

---

**3.** It is important to note that in *Fluker* the decision holding that the affidavit at issue was sufficient to establish probable cause was not based solely on the personal observations of affiant during the controlled buy. Instead it was also based in part on other corroborating

evidence contained within the affidavit. The Court in *McLeod*, however, based its finding of probable cause solely on the observations of affiant even though the informant was not searched prior to making the alleged buy.

*California*, 374 U.S. 23, 35–36, 83 S.Ct. 1623, 1630–1631, 10 L.Ed.2d 726 (1963) (stating that police observations gave rise to a strong suspicion of criminal conduct on the part of defendant which was raised to probable cause to issue an arrest warrant when considered together with an imperfect informant's tip).

Much of that corroborative evidence is provided by a fourth "reliable confidential informant" and is set out in the tenth and eleventh paragraphs of the affidavit. The tenth paragraph provides that on February 16, 1981, the informant observed Walker in the 1968 Chevrolet owned by co-defendant Thoroughgood in Rehoboth Beach sell an ounce of marijuana to another individual. The final paragraph states that the informant is reliable "in that he has assisted . . . affiant in obtaining drugs and information responsible for 24 arrests for drug violations."

Defendants contend that since no details were included in the allegation indicating when the alleged sale took place or where the informant was in relation to the car, it is insufficient to support a probable cause determination. It is also argued that affiant's statement to the effect that the informant had provided information which aided in twenty-four drug-related arrests is insufficient to establish the credibility of the informant.

Defendants' first contention fails because the informant's allegation of first hand observation is adequate to permit the magistrate to conclude that he had a proper basis of knowledge concerning the alleged sale. It is not necessary for the informant to have positively identified the substance being sold or to set forth all of the details concerning the time and location of the alleged sale. His personal observation coupled with his obvious experience in the field were sufficient to establish his basis of

knowledge and sustain his conclusion that it was marijuana that was sold.

On the issue of the informant's credibility, I believe that the rule set forth in *Sexton* controls. As was previously noted, it was there held that in order to establish the reliability of an undisclosed informant it is necessary to look not at his record for aiding arrests or convictions but, rather, to consider whether his information has been verified in the past. Though the affiant did not specifically state that the informant's past tips have been verified, it is reasonable to assume that such is the case. Common sense dictates that when an informant has repeatedly given information leading to many arrests the magistrate could reasonably conclude that the police would not time and time again accept such information unless the previously provided information had been verified. Therefore, I find that in this case the Magistrate could have properly found the informant to be credible. Having satisfied both prongs of the *Aguilar* test it is necessary to point out that while this allegation, taken in isolation, is sufficient to establish probable cause to arrest defendant Walker [4] and is probably sufficient to establish probable cause to search defendant Thoroughgood's vehicle,[5] it does not provide probable cause to warrant a search of defendants' residence.

I now address the independent police information provided by affiant which buttresses the hearsay information provided by the third and fourth informants. In the seventh paragraph of the affidavit, affiant states that he personally knows that defendant Walker has been the subject of numerous drug-related incidents over the past three years, and that he has removed illicit drugs from defendant's person and his 1975 Chevrolet van.

---

**4.** The standards of probable cause for search and arrest warrants are the same. *See, Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

**5.** It is unnecessary to establish probable cause to search defendant Thoroughgood's vehicle

solely on the basis of the tip provided by the fourth informant since by reading the affidavit as a whole corroborative evidence is provided lending even more support to the probable cause determination.

Defendants argue that this allegation is "fatally defective" in that it fails to state when the alleged incidents occurred, rendering the information stale. Further, it is contended that permitting the Magistrate to consider defendant's past criminal conduct resulted in the warrants having been issued on the basis of that past conduct rather than on a present finding of probable cause.

It is well established that an affiant's knowledge of a suspect's reputation may be relied on by a magistrate as corroborative evidence in establishing the reliability of informants' tips. *United States v. Harris*, 403 U.S. at 583, 91 S.Ct. at 2081; *Jones v. United States*, 362 U.S. at 271, 80 S.Ct. at 736. As was stated by the Court in *Jones*:

> The informant had previously given accurate information. His story was [also] corroborated by other sources of information. And petitioner was known by the police to be a user of narcotics. Corroboration through other sources of information reduced the chances of a reckless or prevaricating tale; that petitioner was a known user of narcotics made the charge against him much less subject to skepticism than would be such a charge against one without such a history.

Therefore, it was entirely proper for the Magistrate in the present case to consider affiant's knowledge of defendants' past reputation and the fact that affiant had removed drugs from defendants' vehicle. This information provided some measure of corroboration which the magistrate could consider in determining the reliability of the information received from the informants.

Other facts known to the affiant were that the car from which the fourth informant allegedly saw defendant Walker make a sale of marijuana was registered to defendant Thoroughgood and that it and the vehicle registered to Walker (the same vehicle from which affiant had previously removed illicit drugs) were frequently parked outside defendants' residence at 31 Pine Reach, Henlopen Acres. Finally, through an admission by defendant Walker to affiant it was established that Ms. Thoroughgood also resides at 31 Pine Reach.

As previously noted, when each of the allegations provided by the informants are considered in isolation none is sufficient to establish probable cause to search all three locations. Nevertheless, when the affidavit is read as a whole, as it must be, the information provided by the informants is buttressed by the independent corroborative evidence supplied by affiant. The result is an affidavit which, when considered in light of the presumptions previously set forth, a reasonable, neutral and detached magistrate could properly find sufficient to establish probable cause justifying the issuance of a search warrant for defendants' residence and vehicles.

For all of the reasons stated herein, defendants' motions to suppress the evidence seized pursuant to the issued search warrant are denied.

It Is So Ordered.