Willie M. Levett was convicted of the unlawful possession of cocaine, a violation of Ala. Code 1975, § 13A-12-212(a)(1). He received a split sentence of five years, with one year to be served in the county jail and five years' probation. On this appeal of that conviction, he raises five issues.
 I
The appellant contends that the search of his residence was illegal because *Page 132 
there was insufficient probable cause for the issuance of the search warrant.
The warrant was obtained by Opelika police detective Michael Pink on the evening of September 14, 1989, from a Lee County circuit judge. The affidavit for the warrant states that
 "[w]ithin the past seventy-two hours a reliable confidential informant has purchased cocaine from a black male known as Willie Levett, alias. The drug purchase was a Controlled Drug Buy and was monitored by Detectives Melvin Harrison and Michael Pink of the Opelika Police Department."
Detective Pink testified at the hearing on the motion to suppress that he told the judge who issued the warrant that the informant "had passed on some information in the past that became true, and he had passed some information that led to about four or five arrests." He also told the issuing judge that, on the previous day, he and Detective Harrison met with a confidential informant at a ballpark near the appellant's trailer. Pink patted down the informant, placed a body transmitter on him, and gave him $25. The informant then drove his own vehicle to the appellant's trailer, purchased cocaine, returned to the officers, and gave them the drug.
On cross-examination during the suppression hearing, Detective Pink conceded that he had conducted only a limited search of the informant's person and vehicle. He "body-patted" the informant and looked in the "seat and glove box," of the informant's car, but he did not "stick [his] hand all up under the dash" of the vehicle. He acknowledged that "it would have been possible for [the informant] to have had drugs with him at that time that [Detective Pink] didn't find."
Detective Pink testified at the suppression hearing that the detectives followed the informant's vehicle until they "thought it was time to get off of him," which was apparently before the informant turned down the street leading to what he identified as the appellant's trailer. From that point, the informant was "completely out of [the detectives'] sight." About one and a half minutes later, Detective Pink heard the following over the transmitter:
"KNOCK; DOOR OPENING
 "Informant: 'How are you doing, Willie? You got a package?'
"Voice: 'Wait a minute.'
"PAUSE
"Voice: 'Here you go.'
 "Informant: 'It's a nice package. I'll see you later.' "
Shortly thereafter (the record does not indicate how long), the informant returned to Detective Pink with a piece of aluminum foil containing crack cocaine, which he said he had just purchased from the appellant. The officer and the informant then rode back through the trailer park, and the informant identified the trailer in which he had purchased the cocaine. Detective Pink ran a license check of a vehicle parked in the yard of the designated trailer and found it was registered to the appellant. He also determined that the utilities for the mobile home were listed in the appellant's name.
The purpose of a "controlled buy" is to diminish the risk of falsehood in the informer's story and to obviate the need for an extended evaluation by the magistrate of the informer's credibility. See 1 W. LaFave, Search Seizure § 3.3(f) (2d ed. 1987). LaFave observes:
 "Yet another situation in which the corroboration will suffice to show veracity is that in which the informant has not been working independently, but rather has cooperated closely with the police, as is true when the informant makes a controlled purchase of narcotics. That is, where there is 'physical proximity and active participation in the informant's intrigue' by the police, so that it is not 'independent police work' which corroborates, but rather 'the police corroboration is a co-ordinate and intrinsic part of the informer's operation,' the risk of falsehood has been sufficiently diminished. As explained in State v. Barrett [132 Vt. 369, 320 A.2d 621 (1974)]:
 " 'The purpose of the search of the informer and his being escorted to the place of purchase was to eliminate *Page 133 
both as much as possible of the hearsay aspects of the search warrant request and to reduce the reliance on "veracity" to a minimum. The magistrate had enough facts to support a finding of probable cause, and had them in a form which rendered extended evaluation of the informant's credibility unnecessary.' "
Id. at 686-87 (footnotes omitted). The transaction Detective Pink monitored here may have been a "buy," but it was only "semi-controlled" because the detective's involvement did not substantially diminish the risk of falsehood in the informer's story. Detective Pink conceded as much when he admitted that his limited searches of the informer's person and vehicle made it "possible for [the informant] to have had drugs with him at that time that [Detective Pink] didn't find." The fact that the detectives did not escort the informer to the place of purchase, indeed acknowledging that the informer was "completely out of [the detectives'] sight" before the informer arrived at his destination, did not either "eliminate both as much as possible of the hearsay aspects of the search warrant request [or] reduce the reliance on [the informer's] 'veracity' to a minimum." State v. Barrett, 132 Vt. at 374,320 A.2d at 625, quoted in 1 LaFave, supra, § 3.3(f) at 687. This case is therefore not in line with those controlled buy situations "[w]here an informer works in tandem with a law officer, the law officer continually observing the informer" who was "under the constant surveillance of the police except for the time he was actually inside the residence." Williams v. State,530 So.2d 881, 883 (Ala.Cr.App. 1988), cert. denied, 489 U.S. 1028,109 S.Ct. 1159, 103 L.Ed.2d 218 (1989).
Although the involvement of the law enforcement officers in this case did not substantially diminish the risk of falsehood in the informer's story, it did lessen somewhat the likelihood that the informant was lying. LaFave notes that
 "The [controlled purchase] cases are to be distinguished from those in which there was no controlled purchase but the informer supports his story by delivery of the purchased drugs to the police. This is less satisfying corroboration, for it indicates that a purchase occurred but not does indicate much about the informant's truthfulness, though courts are inclined to find this corroboration sufficient as well. See State v. Hayward, 18 Or. App. 128, 523 P.2d 1278 (1974), also noting that the admission-against-penal-interest device will also come into play in such a case."
1 W. LaFave, Search Seizure § 3.3(f) at 686 n. 317 (emphasis added).
The fact that the informant was subject to audio surveillance at least partially reduced the risk that he was lying about his destination and what occurred there.
 "Even when the supervision has not been that close, corroboration which shows that the informant was in fact in contact with the person informed upon for some period of time or that the informant was in a position to see what he claims to have seen at some critical point is particularly helpful. Again, it does not totally eliminate the possibility of falsehood, but the risk is minimized by the fact that it is at least known that the informant could have personal knowledge of what he alleges."
1 LaFave § 3.3(f) at 687 (footnotes omitted). As we observed in a similar context in Powell v. State, 548 So.2d 590, 602
(Ala.Cr.App. 1988), affirmed, 548 So.2d 605 (Ala. 1989), "if [the informant] had been lying . . . he would have been risking exposure of his falsehood by engaging . . . in a police-monitored conversation." The informant must have been aware that if he had been lying about his drug purchase from the appellant, and the police officers discovered his falsehood, he would have to explain his possession of the rock of crack cocaine he delivered to them.
The true "controlled buy" cases present virtually no doubt that probable cause for the issuance of a search warrant is present. Compare Williams v. State, 530 So.2d at 882-83. Although the transaction monitored here was not a true controlled buy, there was, under the totality of the circumstances test announced in Illinois v. Gates,462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 *Page 134 
(1983), a substantial basis for concluding that controlled substances would be found in the appellant's residence. Even using the more stringent Aguilar-Spinelli test, the issuing magistrate was shown the informant's basis of knowledge, reliability, and veracity. See Aguilar v. Texas, 378 U.S. 108,84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. UnitedStates, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The informant's basis of knowledge was personal; he claimed to have purchased the contraband himself from the subject named in the warrant. His reliability was adequately shown by the fact that other information he provided had led to four or five arrests. See Heath v. State, 485 So.2d 1226, 1234 (Ala.Cr.App. 1986) (information which led to three arrests satisfied reliability inquiry); Keller v. State, 54 Ala. App. 127, 129-30,305 So.2d 402, 403-04 (1974) (same). The informant's veracity was sufficiently established by the fact that although the police did not keep him under visual surveillance, their audio contact with him minimized the chance that he was fabricating information about the drug buy.
The search warrant was supported by probable cause and the trial court did not err in denying the motion to suppress.
 II
Although controlled substances were found in the bathroom and kitchen of the appellant's trailer, he was charged with possession only of the cocaine found in his pants pocket. He argues that there was insufficient evidence to convict him because the State did not prove that he knew of the presence of cocaine in his pocket.
There were initially three, and later four, officers who participated in the execution of the search warrant. They encountered nine or ten people inside the appellant's trailer and did not have enough handcuffs to secure all of those present during the search. All of the occupants were initially patted down for weapons, but two females in the trailer were not thoroughly searched or patted down "to the extent the men were" because there were no female law enforcement officers at the scene.
When the appellant was patted down, no contraband was found on his person. He was handcuffed and secured face down near the two females. The State's evidence regarding whether or when the females were handcuffed was conflicting. Officer John Richardson, an ABC Board narcotics agent, stated that he handcuffed one female immediately and then later borrowed handcuffs from another officer and handcuffed the other female. Captain John Toney of the Opelika Police Department testified that "neither one of [the females] may have been handcuffed, but [he] believe[d] one of them was."
Appellant claims that because no cocaine was found on him during the initial patdown search when the officers first entered the trailer, the cocaine which was found in his pants pocket almost one hour later must have been "planted" on him by one of the other people, specifically one of the two females present on that occasion.
"[T]he fact that [the cocaine] was found in [the appellant's] pocket places it of necessity within his domination or physical control and 'raises a presumption that he placed the substance there and that he knew what it was.' Chatom v. State,360 So.2d 1068, 1073 (Ala.Cr.App.), cert. denied, Ex parte Chatom,360 So.2d 1074 (Ala. 1978)." Norris v. State, 455 So.2d 226, 227
(Ala.Cr.App. 1984), overruled on other grounds, Ex parteChambers, 522 So.2d 313 (Ala. 1987). In Norvene v. State,436 So.2d 23, 24-25 (Ala.Cr.App. 1983), this Court held that although no contraband was found on the accused during two earlier patdowns at the scene of an arrest, the evidence was "sufficient to sustain a guilty verdict finding the [accused] guilty as charged" because drugs were later found in the pocket of the clothes he was wearing during a more thorough search at the police station.
The State's evidence was sufficient to present a prima facie case of possession of controlled substances. Whether or not someone else placed the cocaine in the appellant's pocket was a jury question. *Page 135 
 III
At trial, Officer Michael Pink identified State's Exhibit 1 as the affidavit for the search warrant he signed and State's Exhibit 2 as the search warrant he obtained from the circuit judge. The following then occurred:
 "MR. WILKES [assistant district attorney]: We offer State's Exhibits 1 and 2.
"MRS. BROWN [defense counsel]: Judge, we object.
 "THE COURT: It can be admitted to the Court Reporter for the purpose of the search warrant itself, but not go to the jury.
"MRS. BROWN: Judge, may we approach the bench?
"THE COURT: Sure."
At a bench conference following the above exchange, defense counsel moved for a mistrial on the ground that the prosecutor knowingly introduced inadmissible exhibits into evidence in order to prompt an objection from the defense and to make it appear to the jury that the defense was hindering the search for relevant evidence. The appellant argues that the trial judge emphasized the fact that he had successfully kept evidence from the jury and compounded the prejudice to the appellant by stating that the exhibit was "admitted . . . but [would] not go to the jury."
Affidavits and search warrants are part of the official court record in a criminal case. See Hardy v. Gascoignes, 6 Port. 447, 452 (1838) (execution of writs and processes, and returns thereon, are part of judicial record). However, like indictments, which are part of the court file in criminal cases but are not generally considered "evidence" themselves, affidavits and warrants are generally not "evidence," and because they are already before the court as part of the case file, they need not be "offered into evidence." They are, in fact, very often inadmissible because of the hearsay contained therein. See Lamar v. State, 578 So.2d 1382, 1389 (Ala.Cr.App. 1991).
Thus, the prosecutor here need not have offered the affidavit and warrant into "evidence" to have had them considered by the trial court. Nevertheless, on the record before us, we can discern no improper motive on the part of the prosecutor in offering the exhibits. Likewise, we find no impropriety in the trial court's statement that the exhibits would "be admitted to the Court Reporter . . . but not go to the jury." This comment was an explanation of the ruling of the court and was not error.
 "The law does not prohibit the trial judge from giving trial counsel his reasons in making certain rulings as to the law applicable to the case. This falls far short of a comment on the evidence. Bedingfield v. State, [47 Ala. App. 677, 681, 260 So.2d 408, 412 (1972)].
 "In 23 C.J.S. Criminal Law § 993, p. 1024, it is said, 'Generally, it is not improper comment on the evidence for the judge to explain his ruling on a matter of law, and he may refer to testimony and state its legal effect, in deciding a point raised during the trial.' "
McDonald v. State, 340 So.2d 80, 83 (Ala.Cr.App.), cert. denied, 340 So.2d 84 (Ala. 1976). See also Tombrello v. State,421 So.2d 1319, 1322-23 (Ala.Cr.App. 1982).
Furthermore, even if the prosecutor's conduct did imply to the jury that defense counsel was trying to keep evidence from them, a mistrial was much too drastic a sanction for the impropriety. "[A] mistrial 'specifies such fundamental error in a trial as to vitiate the result,' Diamond v. State,363 So.2d 109, 112 (Ala.Cr.App. 1978), and should be granted only when a 'high degree of "manifest necessity" ' is demonstrated,Wadsworth v. State, 439 So.2d 790, 792 (Ala.Cr.App. 1983), cert. denied, 466 U.S. 930, 104 S.Ct. 1716, 80 L.Ed.2d 188
(1984)." Garnett v. State, 555 So.2d 1153, 1155 (Ala.Cr.App. 1989).
"A motion for mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by action of the trial court." Nix v. State, 370 So.2d 1115, 1117
(Ala.Cr.App.), cert. denied, 370 So.2d 1119 (Ala. 1979), quoted in Henry v. State, 468 So.2d 896, 901 (Ala.Cr.App. 1984), cert. denied, 468 So.2d 902 (Ala. 1985). Here, defense counsel could have requested the court to instruct the jury that a lawyer *Page 136 
has the duty to object to evidence he believes is inadmissible and he is not, by objecting, trying to hinder the search for the truth. Compare Watkins v. State, 565 So.2d 1227, 1229
(Ala.Cr.App. 1990) (wherein accused contended that "the trial court erred in not instructing the jury during the trial court's opening statement that both sides would be objecting and that these objections did not necessarily mean that either party was trying to keep out evidence or hide evidence").
 IV
The appellant claims that the police officers who executed the search warrant did not comply with the "knock-and-announce" rule of Ala. Code 1975, § 15-5-9. That statute provides that
 "[t]o execute a search warrant, an officer may break open any door or window of a house, any part of a house or anything therein if after notice of his authority and purpose he is refused admittance."
Citing McReynolds v. State, 568 So.2d 850 (Ala.Cr.App. 1989), the appellant maintains that the officers were not "refused admittance" before they broke open the door of his trailer.
In McReynolds, the occupants of a motel room had apparently been asleep before officers executing a search warrant simultaneously announced their presence and kicked in the door. This court found a violation of the "knock and announce" rule because (a) the officers heard nothing inside the room prior to their forced entry, and (b) the officers "simply did not wait for a failure to respond." 568 So.2d at 852. In that case, we observed the following:
 "[A] verbal or affirmative refusal from the occupants of a dwelling is not always required before officers may make a forced entry to execute a warrant, Laffitte v. State, 370 So.2d 1108
(Ala.Cr.App.), cert. denied, 370 So.2d 1111 (Ala. 1979). [C]ases have held that there must be either (a) 'some positive conduct on the part of the occupants indicating that they are not going to open the door,' from which the officers may 'assum[e] that they [have] been denied admittance,' Annot., 70 A.L.R.3d 217, 224 (1976) (quoted with approval in Laffitte v. State, supra, 370 So.2d at 1110), or (b) a 'fail[ure] to respond within a reasonable time, [from which] refusal can be presumed.' Irwin v. State, 415 So.2d 1181, 1183
(Ala.Cr.App.), cert. denied, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982)."
McReynolds v. State, 568 So.2d at 851.
Opelika police patrolman Lopez Lockhart testified that before he broke open the door of the appellant's trailer he heard "movement inside" that "sounded as though they were going to the back of the trailer and not coming to answer the door." Thus, in contrast to McReynolds, here there was
 " 'positive conduct' by the occupants of the [trailer] from which the officers could conclude that the appellant either was not going to open the door or was destroying evidence. Compare Shaneyfelt v. State, 494 So.2d 804, 807
(Ala.Cr.App. 1986) (occupants were 'moving around' and saying 'police, police'); Connor v. State, 382 So.2d 601, 603 (Ala.Cr.App. 1979), cert. denied, Ex parte Connor, 382 So.2d 605 (Ala. 1980) ('scurrying'); Laffitte v. State, supra
('running'); Daniels v. State, 391 So.2d 1021 (Ala. 1980) ('movement')."
McReynolds v. State, 568 So.2d at 851-52.
 V
After deliberating for awhile, the jury asked to be reinstructed on the principles of constructive possession and circumstantial evidence. The following occurred:
 "THE COURT: Well, what I would like to tell them, . . . if the lawyers will agree, that stuff that would be in the defendant's pocket would be actual possession, because [the assistant district attorney], at the end of the case, he said we're not really arguing about constructive possession, the cocaine that was in the bathroom. Constructive possession really doesn't have anything to do with this case at this time, but you people had already [argued] the requested charges and this type thing prior to the time the Court ruled on those written charges. *Page 137 
So there wasn't any way I could change that.
 "DEFENSE COUNSEL: . . . [P]ossession includes knowledge. . . . [I]f I have something in my pocket and I don't know it's there, I [am] not . . . in actual possession of it —
 "THE COURT: You were in actual possession but you don't have the element of knowledge which means it is not an offense.
 "DEFENSE COUNSEL: No, sir, because possession includes the element of knowledge. And you can't take the two apart. Possession as a legal term, I would submit to the Court, has to include that knowledge. . . . [A]ctual and constructive possession both include knowledge. . . .
 "THE COURT: Let me give you what I think is an example. I understand what you're saying. Suppose I walked through a patch of marijuana and got some in the cuff of my britches and I didn't know it was there. Now I'm in possession of it. . . . I have not committed any legal offense because I didn't have any knowledge that it was there. But still the possession was actual possession. . . .
 "DEFENSE COUNSEL: — object and the reason I object in that particular example . . . is because you didn't even have actual possession as far as the legal term goes, because the knowledge has to be there."
The trial court gave the jury the following supplemental instruction on possession:
 "There's two kinds of possession. Each are possession, ladies and gentlemen of the jury. The indictment says the defendant did possess the item enumerated. Possession can be either constructive or actual possession. Actual possession is what you have within your physical power of control. Constructive possession means it's outside the physical power of a person's control but still within their authority of control. For instance, I now have physical possession of this pen. It's when — I've got it. It's right here on my arm. It would be the same way. I have constructive possession of what's in my automobile. I can't physically control it, but it's out in my automobile outside of the Courthouse, and I've got the keys to it. I, also, have constructive possession of what's in my house.
 "Now let me read this again to you. Possession means to exercise control over something. Possession may be direct physical custody like holding an item in one's hands, or it may be constructive as in the case of the person who hides an item in a locker or car to which that person may return to retrieve it. Before you may find an accused guilty of possession of a controlled substance, you must be convinced beyond a reasonable doubt that the possession by the accused was knowing and conscious. Possession inherently includes the power or authority to preclude control by others. It is possible, however, for more than one person to possess an item simultaneously, as when several people share control of an item. An accused may not be convicted of possession of an controlled substance if the accused did not know that the substance was present under the accused's control. Awareness of the presence of a controlled substance may be proved by circumstantial evidence. Whether it was proved or not is a question, of course, for you to decide."
We agree with the trial court that constructive possession was not at issue here because the appellant was in actualpossession of the cocaine in his pants pocket and because he was not charged with the possession of any other controlled substances. See Walker v. State, 356 So.2d 674, 675
(Ala.Cr.App. 1977), cert. denied, 356 So.2d 677 (Ala. 1978) (after remand from Alabama Supreme Court) (wherein this Court observed that "[t]he evidence clearly shows that the appellant was in actual possession of a package containing heroin. The only disputed fact is whether or not she knew that the sealed package did contain heroin"). As in Walker, the only disputed issue here was whether the appellant's actual possession was knowing. There was no error in the court's supplemental charge *Page 138 
to the jury. The instruction made it clear that the jury was not authorized to convict the appellant unless it found that heknowingly possessed the controlled substance.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.