2009 VT 86

**STATE of Vermont v. Edward CHARBONNEAU**

[980 A.2d 279]

Nos. 08-037 & 08-435

¶ 1. August 19, 2009. Defendant appeals from his conviction, following a jury trial, of simple assault. He contends that the trial court erred in failing to grant his motion for a new trial based upon the discovery of new evidence potentially implicating the veracity of the testimony of one of the State's witnesses. He also argues that the prosecution and the trial court committed a variety of procedural and evidentiary errors with respect to the testimony of this witness. We affirm.

¶ 2. On May 6, 2008, defendant's wife was involved in an automobile accident. The police responded to the accident and ultimately processed her for driving under the influence (DUI). Due to statements made by defendant's wife during her DUI processing regarding her tumultuous relationship with defendant, the police decided to release her to complainant instead of defendant. The police called complainant, and he picked defendant's wife up from the police station and took her to his home.

¶ 3. The next day, complainant drove defendant's wife to her home to retrieve some clothing from her car. Complainant claimed that when defendant saw his wife, he exited the home and jumped onto her back, exclaiming, "you're going to get yours." Complainant then got out of his car and tried to calm defendant down, but defendant charged complainant and attacked him. Defendant's wife called 911 and told the operator that her husband had just attacked complainant and threatened her. Later, she similarly asserted to a police officer who took her statement

that defendant attacked complainant and threatened her. The State subsequently charged defendant with domestic assault for threatening his wife and simple assault for attacking complainant.

¶ 4. At trial, defendant testified that complainant had attacked him, and he had responded in self-defense. Contrary to her statements to the 911 operator and the police officer, defendant's wife testified that complainant had attacked defendant and that defendant had not threatened her; further, she claimed that her statements to the 911 operator and the police officer were lies. She further testified that over the past several years she had filed fourteen false police reports alleging spousal abuse and had also lied to the police officer during her DUI processing about fearing her husband. Her testimony with respect to the simple assault charge was contradicted by that of complainant and defendant's neighbor, both of whom testified that defendant was the aggressor.

¶ 5. The State also called an experienced domestic violence investigator to testify about his findings on the domestic assault charge. When the State began to ask the investigator questions about "the cycle of violence," defendant objected, arguing that the investigator was testifying as an expert witness. The court allowed defendant to voir dire the investigator in front of the jury and then allowed the State to continue examining the investigator. The State then asked again about the "cycle of violence as it pertains to domestic assault charges" and also about the likelihood that an abused woman would recant her initial allegation of spousal abuse. The investigator testified that almost all women — above ninety percent — recant their initial allegations of spousal abuse, and, on cross-examination, he opined that these women are lying when they recant.

¶ 6. The jury convicted defendant on both counts, but the court granted a

judgment of acquittal on the domestic assault charge, finding the State's evidence on that charge insufficient.

¶ 7. Defendant claims subsequently to have discovered that the police investigator inaccurately stated his credentials and moved, pursuant to Vermont Rule of Criminal Procedure 33, for a new trial based on this new evidence. Specifically, defendant asserted that the investigator overstated the qualifications of one of the primary instructors of a training program that he attended, and it follows, therefore, that he improperly inflated his own credentials. This instructor was not, contrary to the investigator's testimony, a psychiatrist. She was a victim's advocate. Additionally, according to defendant, the State did not adequately support the investigator's assertion that the instructor was an expert on domestic violence. Defendant further argued that the investigator's false testimony regarding his qualifications improperly bolstered the investigator's statements that tended to impeach defendant's wife's credibility — prejudicing defendant with respect to his claim of self-defense on the simple assault charge. In other words, due to the investigator's misstatement, the jury was more likely to view the investigator as a "truth detector," effectively impeaching his wife's testimony that defendant acted in self-defense.

¶ 8. The trial court denied the motion. It evaluated defendant's motion under two alternative standards. First, it considered defendant's motion under *State v. Dezaine*, 141 Vt. 335, 449 A.2d 913 (1982), which sets forth our usual test for assessing motions for a new trial based on newly discovered evidence.[1] According to the

trial court, defendant was not entitled to a new trial under *Dezaine* because the new evidence regarding the investigator's credentials merely served to impeach his credibility. The trial court then considered defendant's motion under *State v. Robillard*, which sets forth an arguably more lenient standard for assessing a motion for a new trial based on the post-trial discovery that a witness for the prosecution testified falsely. 146 Vt. 623, 629, 508 A.2d 709, 713 (1986).[2] The court held, however, that defendant had not demonstrated that this new evidence would probably change the outcome of the trial, as required by *Robillard*. This appeal followed.

¶ 9. On appeal, defendant first argues that the trial court applied the wrong standards in assessing his motion for a new trial and therefore reached the wrong result. According to defendant, two United States Supreme Court cases, *Napue v. Illinois*, 360 U.S. 264 (1959), and *Giglio v. United States*, 405 U.S. 150 (1972), present the appropriate framework for analyzing his motion. It was inappropriate, argues defendant, for the trial court to apply the tests set forth in *Dezaine* and *Robillard*.[3] Defendant asserts that applying the correct framework for analyzing his motion is particularly important because under *Napue* and *Giglio* the trial court could not deny his motion for a new trial on the grounds that the newly discovered evidence merely served to impeach the investigator's credibility, see *Giglio*, 405 U.S. at 154 (citing *Napue*, 360 U.S. at 269), and needed to

_____

[1] In *Dezaine*, we addressed the trial court's denial of the defendant's motion for a new trial after his conviction for possessing and transporting a deer out of season. The defendant in *Dezaine* moved for a new trial on the grounds that he had

_____

located a witness who would testify in conclusive support of his alibi defense.

[2] In *Robillard*, the defendant had moved for a new trial after learning, post-trial, that one of the State's witnesses had fabricated his testimony.

[3] In the alternative, he also argues that, even under *Robillard*, he should be granted a new trial.

have addressed whether it was reasonably likely, not probable, that the investigator's false testimony regarding his credentials had an impact on the jury's decision. Compare *id.* at 154 ("A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . .' " (quoting *Napue*, 360 U.S. at 271)), with *Robillard*, 146 Vt. at 628-29, 508 A.2d at 713 (probability of different result), and *Dezaine*, 141 Vt. at 338, 449 A.2d at 914 (same).

¶ 10. Whether to grant a motion for a new trial is a matter of trial court discretion, and we will not reverse the trial court's decision on such a motion unless there is a clear showing of an abuse of that discretion. *Dezaine*, 141 Vt. at 338, 449 A.2d at 914. The trial court did not abuse its discretion here.

¶ 11. Defendant belatedly asserts that *Napue* and *Giglio* govern the analysis regarding his motion for a new trial based on newly discovered evidence. He did not make this assertion in his motion to the trial court. Indeed, he explicitly asked the court to evaluate his motion under the test set forth in *Robillard* — a standard he now argues should not apply. Defendant has not preserved this argument, and we decline to address its merits for the first time on appeal, *State v. Sole*, 2009 VT 24, ¶¶ 13, 15, 185 Vt. 504, 974 A.2d 587, except to say the following.

¶ 12. *Napue* and *Giglio* are readily distinguishable from the case at bar. In *Napue*, the prosecution's principal witness denied that he had received a promise of leniency in exchange for his testimony. Knowing this testimony to be false, the prosecutor did nothing to correct it. The Supreme Court characterized the witness' testimony, which comprised the bulk of the prosecution's evidence against the defendant, as "extremely important." *Napue*, 360 U.S. at 266. Thus, it reversed the defendant's conviction, reasoning that to not do so where the prosecution's knowing use of false testimony directly

bearing on the credibility of a key witness "may have had an effect on the outcome of the trial" would be inconsistent with due process. *Id.* at 269-70, 272. *Giglio* also involved a knowing failure to correct false testimony regarding consideration given to a key government witness. In *Giglio*, "the only witness linking [the defendant] with the crime," 405 U.S. at 151, without whose testimony "there could have been no indictment and no evidence to carry the case to the jury," *id.* at 154, falsely testified that the government had not promised him immunity in exchange for his testimony. Citing, among other cases, *Napue*, the Supreme Court granted the defendant's motion for a new trial. *Id.* at 155.

¶ 13. The investigator's testimony cannot be described as extremely important, central, or material to the State's case against defendant on the simple assault charge. Indeed, it is more aptly described as tangential. The testimony of the complainant, which was corroborated by a disinterested witness, his neighbor, and various pretrial statements of defendant's wife, provided more than ample support for the prosecution's case against defendant. Additionally, although *Napue*, *Giglio*, and the case at bar involve new evidence bearing on witness credibility, the extent to which the new evidence revealed post-trial in each case can be construed as having an impact on the credibility of the witness in question varies considerably in degree. Here, the new evidence merely tends to indicate that the investigator inaccurately stated the qualifications of an instructor of a training program in which he participated years ago — one of several such programs that he attended over the course of his career. Such new evidence is far less damning with respect to credibility than that involved in *Napue* and *Giglio*. In those cases it was revealed, post-trial, that the government's primary witnesses had a substantial incentive to disregard the truth and testify in accor-

dance with the prosecution's theory of the case to receive a more lenient sentence, as in *Napue*, or immunity, as in *Giglio*.

¶ 14. Returning to the trial court's decision on defendant's motion, we observe that the court correctly applied the standards set forth in *Dezaine* and *Robillard* to the facts of this case. In *Dezaine*, we said that, for a defendant to succeed on a motion for a new trial on the basis of newly discovered evidence, he must show that

> the evidence is such as will probably change the result if a new trial is granted; that it has been discovered since the trial; that it could not have been discovered before the trial by the exercise of due diligence; that it is material to the issue; *and* that it is not merely cumulative or impeaching.

141 Vt. at 338, 449 A.2d at 914 (emphasis added). All elements of the test must be satisfied. *Id.* We agree with the trial court's ruling that the new evidence serves merely to impeach the investigator's credibility — and insignificantly at that. According to *Dezaine*, such newly discovered evidence does not warrant a new trial. *Id.* In *Robillard*, we held that a court addressing a motion for a new trial based upon the defendant's post-trial discovery that a witness for the prosecution testified falsely should apply a modified test:

> a new trial will be required when: (1) the court is reasonably well satisfied that the testimony given by a material witness is false; (2) without that testimony the jury *probably* would have reached a different conclusion; *and* (3) the party seeking the new trial was taken by surprise when the false testimony was given or did not know of its falsity until after the trial.

146 Vt. at 629, 508 A.2d at 713 (second emphasis added). As with the test set forth in *Dezaine*, all elements of the *Robillard* test must be satisfied for a defendant's motion for a new trial to be granted, *id.* Here, the investigator simply was not a material witness for the State on the simple assault charge; defendant cannot, therefore, satisfy the first prong of the *Robillard* test. Additionally, and as determined by the trial court, defendant cannot show that the jury probably would have reached a different conclusion in the absence of the investigator's testimony. As stated above, an abundance of other evidence implicated defendant on the simple assault charge, and even without the investigator's testimony, the testimony of defendant's wife was incredible. First, she cast considerable doubt on her own credibility by stating that she had filed fourteen false police reports against defendant in the past. Second, her account of the assault was contradicted by other evidence, namely: the statements she made to the responding police officer; the recording of her 911 call, which the State played for the jury; and the neighbor's and complainant's testimony. On these facts, it strains credulity to say that the jury probably would have reached a different result without the investigator's testimony.

¶ 15. Defendant next advances several procedural and evidentiary arguments related to the admission of the testimony of the police investigator. Defendant takes issue with the State's failure to notify him that it planned to call the investigator as an expert witness. He further asserts that the court erred in allowing him to offer testimony regarding the dynamics of domestic violence and the percentage of victims of domestic violence that recant their initial allegations.

¶ 16. We need not reach the merits of defendant's arguments because any er-

rors with respect to this testimony were harmless beyond a reasonable doubt.[4]

See, e.g., *State v. Oscarson*, 2004 VT 4, ¶ 29, 176 Vt. 176, 845 A.2d 337; V.R.Cr.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); V.R.E.

court erred in admitting testimony of expert that ninety-eight percent of rapes reported actually occurred). In *USGen New England, Inc. v. Town of Rockingham*, we declared that trial judges "must . . . screen expert testimony[,] ensuring that it is reliable and helpful to the issue at hand before the jury hears it." 2004 VT 90, ¶ 19, 177 Vt. 193, 862 A.2d 269. Only *after* the judge has determined that these criteria have been met may a party present the testimony of its expert. *Id.* Here, the trial court dismissively responded to defendant's objection that the investigator was offering expert testimony on the cycle of domestic violence, stating that "[i]t is not a scientific issue." It therefore did not provide for a *Daubert* hearing, notwithstanding our conclusion in *USGen* that such hearings are appropriate for assessing "all types of expert testimony." *Id.* ¶ 17. Such a hearing would have been especially appropriate here to establish whether there was a proper foundation supporting the investigator's statistical conclusions regarding the percentage of victims of domestic violence that recant their initial allegation of assault. The trial court instead limited the defendant to questioning the investigator regarding his qualifications. Following this voir dire, the trial court allowed the investigator to present his testimony, which was based, in part, on the research and presentations of other purported experts, without ever having made a prior, independent evaluation regarding its reliability. Evaluating only the investigator's qualifications does not suffice. *Kinney*, 171 Vt. at 249, 762 A.2d at 842.

[4] Nevertheless, we admonish the State for failing to provide any notice whatsoever that it intended to treat the investigator as both a fact and an expert witness. To comport with the purpose of Rule 16, namely, to prevent the State from gaining an unfair advantage over the defense, see *State v. Streich*, 163 Vt. 331, 349, 658 A.2d 38, 51 (1995), the State must provide notice, prior to trial, of the substance of its expert's testimony, see *State v. Provost*, 2005 VT 134, ¶ 12, 179 Vt. 337, 896 A.2d 55. The State contends that it complied with the notice requirements of Rule 16 because it sent defendant a standard form listing all of the witnesses known to it and provided defendant with a copy of the investigator's statement. Although the form did list the investigator as a witness, it left blank the line for indicating whether the investigator was an expert witness. Moreover, the investigator's statement, which consisted of an affidavit indicating the investigator's title and position within the police force and stating that he had probable cause to believe that defendant had violated a condition of release, was completely unrelated to his testimony as an expert and thus was entirely insufficient to put defendant on notice. We do not condone such gamesmanship.

Further, the trial court erred in performing its role as gatekeeper with respect to the testimony of the investigator, which opened the door for the investigator's testimony to the effect that over ninety percent of victims of domestic violence are telling the truth when they first report an incident — testimony of a nature that we have repeatedly held is inadmissible as tantamount to an expert opinion that the victim is telling the truth. See, e.g., *State v. Kinney*, 171 Vt. 239, 252-53, 762 A.2d 833, 843-44 (2000) (holding

103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."). The investigator's testimony was primarily relevant to the charge of domestic assault, and, as previously noted, defendant was ultimately acquitted of this charge. The only harm alleged by defendant with respect to the simple assault charge is that the investigator's testimony undermined the credibility of his wife, who testified that he attacked complainant in self-defense. As explained in greater detail above, other witnesses' contradictory testimony and wife's own excited utterances and prior inconsistent statements rendered her credibility negligible at best. Thus, the investigator's testimony was merely cumulative on the issue of defendant's wife's credibility and did not, ultimately, prejudice defendant on the simple assault charge. See *State v. Burgess*, 2007 VT 18, ¶ 9, 181 Vt. 336, 917 A.2d 528 (concluding that even assuming that evidence in question was erroneously admitted, due to its cumulative nature, its admission was harmless error).

*Affirmed.*