2011 VT 57

# State of Vermont v. Edward Charbonneau

[25 A.3d 553]

No. 10-061

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed May 27, 2011

*Deborah A. Celis*, Franklin County Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Rebecca Turner*, Appellate Defender, and *Rachel Westropp*, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant appeals from the trial court's denial of a motion for new trial based on newly discovered evidence. Defendant's conviction for simple assault, following a jury trial, arose out of a physical confrontation between defendant and complainant. On appeal, defendant argues that the trial court erred in concluding defendant failed to show that the new evidence: (1) would probably have changed the result of the jury trial, and (2) could not have been discovered before the trial by the exercise of due diligence. We affirm.

¶ 2. In May 2007, defendant's wife was involved in a car accident. Police responded to the accident, and she was processed for driving under the influence. Because wife indicated "she was afraid and [did not] want to go home," the state trooper investigating the incident released her to complainant, not defendant. Complainant and his wife picked up defendant's wife from the state police and drove her to their home. Complainant testified that, soon after, defendant showed up at complainant's house and began screaming at complainant and his wife. Finally, defendant drove away. Complainant reported that throughout that evening

defendant called his home a number of times, threatening complainant during two of the telephone calls.

¶ 3. The next day, complainant drove defendant's wife to her home to collect some clothes. Complainant testified that while defendant's wife was getting things from her car, defendant came out of the home and jumped on her back, exclaiming, "you're going to get yours." Complainant stepped out of his truck, which was parked in the street opposite defendant's home, and sought to tell defendant to calm down. Defendant, however, charged complainant and attacked him. Complainant tried using a "fishing stick" to get defendant off of him. Finally, complainant was able to call 911 with his cell phone. Defendant's wife also called 911 and reported that defendant was attacking complainant and had threatened her.

¶ 4. The State charged defendant with domestic assault for threatening his wife and simple assault for attacking complainant. At trial, complainant and a neighbor who witnessed the altercation testified that defendant was the first aggressor. Defendant testified that complainant initiated the fight and that he had responded in self-defense. Defendant also testified, however, that the neighbor's testimony was true. Contrary to her statements on the day of the altercation, defendant's wife testified at trial that complainant had attacked defendant and that defendant had not threatened her. To impeach this testimony, the State introduced defendant's wife's written statement from the day of the assault, in which she stated that defendant had threatened to kill her and that defendant had grabbed complainant and punched him.

¶ 5. A jury found defendant guilty of domestic assault on his wife and simple assault on complainant. The court granted a judgment of acquittal on the domestic assault charge, finding that the State's evidence on that charge was insufficient. Defendant was sentenced on the simple assault conviction and given eleven to twelve months to serve. Defendant filed a motion for new trial, which the court denied. Defendant appealed this denial, as well as his conviction. We affirmed both in *State v. Charbonneau*, 2009 VT 86, 186 Vt. 583, 980 A.2d 279 (mem.).

¶ 6. Two months later, defendant produced an affidavit from complainant's son James written on October 9, 2009, more than two years after the incident. In this affidavit, James swore that he had been in defendant's home when the incident occurred. He stated that his father verbally harassed and physically assaulted

defendant, who defended himself using as little physical force as necessary. Contradicting the affirmed conviction, James swore that defendant was not the aggressor. He also stated that although defendant knew James was in defendant's home when complainant arrived with defendant's wife, he had not told defendant that he had witnessed the incident or had information related to his defense. James stated his belief that defendant thought James was in the shower at the time of the incident and therefore did not see it.

¶ 7. James explained in his affidavit that he had not come forward earlier with this information because complainant was his only source of contact with his own son at that time. He stated that he believed complainant would prevent him from seeing his child if he came forward as a witness for defendant and against his father.

¶ 8. Defendant then filed a motion for new trial based on newly discovered evidence. The trial court subsequently held an evidentiary hearing on the motion. At this hearing, James testified that he spent the night before the incident at defendant's home because he anticipated a problem. He reported that when the incident occurred, however, he watched the events unfold while peeking out from an upstairs window and chose not to intervene. He stated that from the window he saw his father charge and threaten defendant, who was standing on his stoop. According to James, defendant asked complainant to leave, but complainant "rushed him and threw a punch." Next, reported James, complainant went back to his truck and got a long weapon with a nail in it. James testified that defendant "had no choice but to close the distance on the weapon and gain control of it and defend himself." James stated that complainant swung the weapon at defendant and used it to lift him off the ground. According to James, defendant had complainant in a headlock and hit him once or twice before the altercation ended.

¶ 9. James could not provide any other details about the incident. He did not recall whether the altercation took place in the morning or midday. He also could not recall what the weather was like on that day. He did testify that complainant's truck was parked in a driveway area perpendicular to defendant's home, a fact of which he was certain. This was inconsistent with the neighbor's testimony at trial that the truck was parked in the street, parallel to defendant's home.

¶ 10. James testified that he did not come forward earlier because his father was the only source of visitation with his child. He testified that he continued to hide in the house, even as defendant was questioned by police and arrested, and that he lied to defendant's wife, telling her he had not seen anything. James also testified that he later lied to complainant, telling him that he had left before anything happened.

¶ 11. James gave confused and contradictory testimony regarding when he told defendant he had witnessed the incident. He first testified that as late as the beginning of October 2009 he told defendant he had not seen what happened. A moment later in his testimony, James claimed that in late September or early October 2009 he had told defendant that he witnessed the incident. He could not explain — and indeed did not acknowledge — that inconsistency. James admitted that during the ensuing two years after learning that defendant had been arrested and charged he did not contact defendant to say that he had witnessed the incident. James also admitted that not long before submitting the affidavit he had had a falling out with complainant over a piece of property that he wanted from complainant.

¶ 12. At that same hearing, complainant similarly testified that he and James had had a falling out that past summer over a piece of complainant's property that James wanted to use to pay off a debt. Complainant testified that James threatened him, saying he "would pay for it because [he] didn't do it" and he would "get even with [him]."

¶ 13. The court denied the motion for a new trial based on newly discovered evidence after evaluating it under the standards we set forth in *State v. Dezaine*, 141 Vt. 335, 338, 449 A.2d 913, 914 (1982), and reaffirmed in *Charbonneau*, 2009 VT 86, ¶ 14. To succeed on a motion for a new trial on the basis of newly discovered evidence, a defendant must show:

> that "the evidence is such as will probably change the result if a new trial is granted; that it has been discovered since the trial; that it could not have been discovered before the trial by the exercise of due diligence; that it is material to the issue; *and* that it is not merely cumulative or impeaching."

*Charbonneau*, 2009 VT 86, ¶ 14 (quoting *Dezaine*, 141 Vt. at 338, 449 A.2d at 914). The court found it undisputed that the new

proffered evidence was discovered after trial, was material, and was not merely impeaching or cumulative. The court concluded, however, that defendant failed to demonstrate that this evidence could not have been discovered before trial with due diligence or that the new evidence would probably change the result if a new trial were awarded. In particular, the court found that defendant had not shown that complainant's son was a credible witness or that his testimony would probably change the result of the trial. This appeal followed.

¶ 14. On appeal, defendant claims that the trial court erred in denying his motion for new trial based on newly discovered evidence pursuant to Vermont Rule of Criminal Procedure 33. He argues both that the new evidence would probably change the result of the jury trial and that the new evidence could not have been discovered before the trial through the exercise of due diligence — the two factors of the test he failed below. We affirm the trial court's decision that the new evidence would not probably change the result of the trial and therefore do not reach defendant's second argument. See *Charbonneau*, 2009 VT 86, ¶ 14 (all five elements of test must be met for trial court to grant motion for new trial based on newly discovered evidence).

¶ 15. Defendant argues that it was improper for the trial court to consider the new witness's credibility in support of its conclusion that the new evidence would not probably change the result of the jury trial. He contends that the trial court's assessment of James's credibility intruded on the province of the jury, particularly where his credibility was a close question and evidence of defendant's guilt at trial was not overwhelming and came down to a question of witness credibility. We disagree.

¶ 16. We emphasize at the outset that the decision to grant a motion for a new trial pursuant to Rule 33 is within the discretion of the trial court, and we defer to its judgment. V.R.Cr.P. 33 ("The court on motion of a defendant may grant a new trial to him if required in the interests of justice."); see *State v. Haner*, 2007 VT 49, ¶ 5, 182 Vt. 7, 928 A.2d 518 ("The ultimate decision to grant or deny a Rule 33 motion based on newly discovered evidence is left to the sound discretion of the trial court . . . ."). The test is stringent, *Dezaine*, 141 Vt. at 338, 449 A.2d at 914, and all five elements must be satisfied for the trial court to grant a motion for new trial. *Charbonneau*, 2009 VT 86,

¶ 14. Absent a showing of abuse or withholding of discretion, we will uphold the trial court's decision. *State v. McKeen*, 165 Vt. 469, 472, 685 A.2d 1090, 1092 (1996).

■ ¶ 17. The test's first element — that the evidence will probably change the result upon retrial — is especially difficult for a defendant to show because it requires that a new result is probable, not that it is simply possible. *State v. Miller*, 151 Vt. 337, 339, 560 A.2d 376, 377 (1989); see also *State v. Robillard*, 146 Vt. 623, 629, 508 A.2d 709, 713 (1986) (explaining that to succeed on motion for new trial based on newly discovered evidence of perjury at trial, defendant must show that evidence will probably alter jury's verdict). That is, the trial court must find that the newly discovered evidence will likely lead to an acquittal of the defendant on retrial. *State v. Mecier*, 145 Vt. 173, 181, 488 A.2d 737, 742-43 (1984); see Reporter's Notes, V.R.Cr.P. 33 ("Both the Vermont and federal cases hold that to permit grant of a new trial, the new evidence . . . must appear likely to bring about an acquittal on a retrial."). To make this determination, the trial court must evaluate the quality of the proffered new evidence. *Miller*, 151 Vt. at 339, 560 A.2d at 377.

■ ¶ 18. A trial court's assessment of the credibility of both a witness who offers newly discovered testimony and the testimony itself is simply part of the evaluation of the quality of the evidence. See *id.* (affirming trial court's denial of motion for new trial where "[t]he trial court found that much of the new evidence was not credible"); see also *State v. Barrett*, 132 Vt. 369, 374-75, 320 A.2d 621, 625 (1974) (affirming trial court's denial of motion for new trial where trial court rejected testimony of witnesses as not credible); cf. *United States v. Wilkerson*, 251 F.3d 273, 278 (1st Cir. 2001) (explaining that motions for a new trial are directed to the broad discretion of the trial judge, who may weigh the evidence and evaluate the credibility of witnesses when considering the motion); *Shabazz v. State*, 792 A.2d 797, 804 (Conn. 2002) (explaining that trial court may assess credibility of witnesses to determine if proffered new evidence is likely to produce different result on retrial); 3 C. Wright & S. Welling, Federal Practice and Procedure § 583, at 446-47 (4th ed. 2011) ("If there is an issue about the credibility of the newly discovered evidence, the role of the judge is that of fact finder. . . . When evaluating credibility, the judge may use the knowledge gained from presiding at trial,

as well as the showing made on the motion . . . ."). Indeed, we have held that, when requested, an evidentiary hearing should be granted on a Rule 33 motion for new trial based on newly discovered evidence precisely for the purpose of evaluating the credibility of the new evidence to determine whether the motion should be granted. *State v. Unwin*, 142 Vt. 562, 564-65, 458 A.2d 1107, 1108-09 (1983).

■ ¶ 19. The cases defendant cites to support his argument that the trial court's threshold assessment of credibility improperly encroached upon the jury's province are inapposite. Our statement in *State v. Hinchliffe* that the credibility of the witness is a matter entirely within the province of the jury referred to testimony from trial and was made in the context of our review of a denied motion for acquittal, not a motion for new trial based on newly discovered evidence. 2009 VT 111, ¶ 22, 186 Vt. 487, 987 A.2d 988. Similarly, our decision not to employ the concept of the trial court as the "thirteenth juror" in *State v. Ladabouche*, 146 Vt. 279, 285, 502 A.2d 852, 856 (1985), because it would "seriously intrude upon the jury's function" was made in affirming a trial court's decision not to grant a motion for new trial on the grounds of sufficiency of the evidence, not a motion for new trial based on newly discovered evidence. The trial court's threshold assessment of credibility when evaluating the quality of evidence for this factor does not usurp the function of the jury but rather allows a trial court to draw the line — as our standard requires — between the mere possibility of a different result and the probability of one.

■ ¶ 20. Here, the trial court did just that. Based on the evidentiary hearing it conducted, the trial court concluded that the proffered evidence would not probably change the result of the jury trial because James was not a credible witness, and, even if he were credible, the testimony would still not probably change the result, given the testimony's substance and the circumstances surrounding its discovery. In support of both conclusions, the court cited James's delay of more than two years following defendant's charge before coming forward with his story, as well as the falling out with complainant that immediately preceded his coming forward. It also cited the differences between his account of events and that of the unbiased neighbor who witnessed the incident and the fact that he was unable to accurately describe the location of complainant's truck at the time of the incident. We are

not persuaded by defendant's attempts to distinguish this case from other instances in which we have affirmed a trial court's consideration of credibility in the analysis of whether newly discovered evidence would probably change the result of a trial. The circumstances from which defendant's proffered evidence arose and the inconsistencies between James's testimony and that of other witnesses cut against the credibility of the testimony, and the trial court was justified in considering them.

¶ 21. Moreover, there was substantial evidence at trial supporting the jury verdict that did not hinge solely on the question of witness credibility. The trial court, thus, had ample grounds to conclude that a different result was not probable as a result of James's testimony, notwithstanding his credibility. Cf. *State v. Schreiner*, 2007 VT 138, ¶ 29, 183 Vt. 42, 944 A.2d 250 (explaining that for this element of test "we look at the newly discovered evidence in relation to the State's case against defendant"). Aside from complainant's own testimony, this evidence included calls to 911 from both complainant and defendant's wife stating that defendant was attacking complainant and had initiated the altercation; defendant's wife's written statement from the day of the incident stating that defendant grabbed complainant and started punching him; and defendant's wife's verbal statement to the state trooper on the day of the incident that defendant began punching complainant in the head. In addition, there was testimony from an impartial witness, a neighbor, explaining that defendant charged complainant, pulled him out of the truck, and began hitting him. Defendant himself testified at trial that this neighbor was unbiased and her testimony true. The trial court's conclusion that the newly discovered evidence would not probably change the result at trial follows directly from the extensive evidence from trial, especially when considered in conjunction with the inconsistencies and circumstances of the proffered new evidence.

¶ 22. Because we hold that the trial court's determination regarding this first factor shows no abuse of discretion, we do not reach defendant's additional argument that the trial court erred in finding that the new evidence could have been discovered before the trial through the exercise of due diligence.

*Affirmed.*