NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 67

No. 2015-462

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Bryan L. Perrault | February Term, 2017 |

Thomas J. Devine, J. (motion to voir dire juror); Michael S. Kupersmith, J. (Ret.) (final judgment)

Thomas J. Donovan, Jr., Chittenden County State's Attorney, and Pamela Hall Johnson, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **SKOGLUND, J.** On appeal—after a jury convicted defendant of one count of possessing marijuana and two counts of possessing a depressant or stimulant—defendant argues that he is entitled to a new trial because he discovered, post-trial, that one of the jurors had been previously convicted of a federal felony. He also claims that the evidence was insufficient to establish that he knowingly possessed a depressant or stimulant in violation of 18 V.S.A. § 4234(a)(1). We conclude that the trial court did not abuse its discretion when it denied defendant's motion for a new trial and that the evidence was sufficient to convince the jury that the State proved the elements of § 4234(a)(1) beyond a reasonable doubt; thus, we affirm.

## I. Motion for a New Trial

¶ 2. After his jury conviction, defendant filed a motion for a new trial based on his post-trial discovery that a juror failed to disclose a federal felony conviction on her juror questionnaire form. Because part of the juror's post-release sentence was supervised by the U.S. District Court for the District of Vermont, defendant claimed that the juror's participation in the trial violated 4 V.S.A. § 962(a)(5), which disqualifies persons from jury service who have "served a term of imprisonment in this state after conviction of a felony." We conclude that the trial court did not abuse its discretion when it denied defendant's motion for a new trial because a new trial is not likely to change the result. Specifically, § 962(a)(5)'s plain language does not apply to the juror and defendant failed to demonstrate either actual bias or that the juror dishonestly answered the juror questionnaire.

¶ 3. On February 19, 2015, the jury convicted defendant of one count of possessing marijuana in violation of 18 V.S.A. § 4230(a)(1) and two counts of possessing a depressant, stimulant, or narcotic in violation of 18 V.S.A. § 4234(a)(1). The court set March 6, 2015, as the last date for any post-trial motions.

¶ 4. On April 8, 2015, defendant filed a motion to voir dire one of the jurors. In his motion, defendant alleged that he had recently discovered that one of the jurors had the same first name, last name, and middle initial as a convicted felon who—fourteen years earlier—had pled guilty in Nevada federal court to a felony charge of intent to distribute a controlled substance. On June 8, 1999, the federal judge imposed a sentence of fifteen months to serve and thirty-six months post-release supervision. The supervised release was from November 21, 2001, to November 21, 2004; on June 20, 2002, the felon's post-release supervision was transferred within the federal court system to the District of Vermont, where the felon served the remainder of her supervised release until it ended in 2004. Although the felon and the juror shared the same name, defendant noted that the juror did not mention a felony conviction to the court and did not affirmatively

2

answer a question on the juror questionnaire asking her whether she had ever been a party in a criminal or civil lawsuit.[1] To confirm whether the juror and the felon were the same person, defendant asked the court for the opportunity to voir dire the juror to ensure his right to a fair trial had not been jeopardized.

¶ 5. The court granted defendant's motion for voir dire. In the entry order granting the motion, the court noted that defendant did not object to the juror being impaneled prior to trial. The court then pointed to case law from this Court suggesting that, if a defendant fails to object to a juror being impaneled and if the basis for the objection is known or could have been discovered with reasonable diligence during voir dire, the court should review any juror disqualification claim for plain error. See State v. Koveos, 169 Vt. 62, 66, 732 A.2d 722, 725 (1999). Unlike Koveos, however, the court noted that the basis for the juror disqualification claim involved an undisclosed felony on the questionnaire and, as such, "[i]t would be unreasonable to expect counsel must verify all the information provided on a juror questionnaire during jury selection." Nevertheless, the court concluded that, in order to justify a new trial, defendant had to establish both the undisclosed conviction and actual prejudice as a result of the undisclosed conviction.

¶ 6. Subsequently, defendant filed a motion to reconsider the court's order, arguing that he should not be required to prove actual prejudice or a violation of his constitutional rights because felons are inherently biased and subject to statutory disqualification under 4 V.S.A. § 962(a)(5). The court denied this motion on May 26, 2015.

¶ 7. In the voir dire hearing, held on September 4, 2015, the court limited the parties' questioning to determining whether the juror had been convicted of a felony and whether that conviction "played any role in compromising [her] ability to objectively and impartially receive the evidence and deliberate." At the same time, the court prohibited any questions involving the

---

[1] The questionnaire specifically asked: "Have you ever been involved in a criminal or civil lawsuit as a party or witness?"

3

substance of the jury's deliberations. Defendant's questions during the voir dire hearing established that the juror was the felon who had pled guilty in Nevada. The juror also confirmed that she had served part of her post-release supervision in the District of Vermont. The juror claimed, however, that her prior conviction had no bearing on her deliberations during the proceedings and that she remained impartial throughout defendant's trial. After confirming the juror's prior conviction, defendant moved for a mistrial because the juror had a prior federal conviction and served a period of her supervised release in the District of Vermont and, therefore, violated 4 V.S.A. § 962(a)(5). The court asked defendant to supplement the oral motion in writing.

¶ 8.     Defendant filed his written motion for a new trial on September 18, 2015. In the motion, defendant conceded that he did not establish actual prejudice during the voir dire hearing. Instead, defendant again argued that "actual prejudice" should not be the standard because "the inherent bias of a convicted felon" provided sufficient grounds to grant a mistrial.[2]

¶ 9.     The court denied defendant's motion for a new trial. Principally, the court held that defendant's motion was untimely under Vermont Rule of Criminal Procedure 33, which states that a motion requesting a new trial must be made within ten days of the verdict, unless the motion is based on "newly discovered evidence." The court concluded that defendant's motion was not

---

[2] Defendant also argued that 4 V.S.A. § 962 was a violation of the Equal Protection Clause of the U.S. Constitution and the Common Benefits clause of the Vermont Constitution; however, defendant does not raise these constitutional arguments on appeal and so we do not address them here.

Similarly, defendant also claimed that his failure to object to the juror's presence pretrial should not be reviewed under a plain error analysis because defendant reasonably relied on the juror questionnaire form, unlike the defendant in State v. Koveos, 169 Vt. 62, 66, 732 A.2d 722, 725 (1999). Defendant does not repeat this argument involving Koveos on appeal. Therefore, we do not address this claim except to note that Koveos raised a different application of "actual prejudice": in Koveos, we required proof of actual prejudice under our familiar plain error standard, see id. at 66, 732 A.2d at 725; by contrast, as noted below, the majority of cases dealing with the post-trial discovery of a statutorily disqualified juror require the defendant to prove actual prejudice to justify a new trial, regardless of whether defendant preserved the error. See infra, ¶ 20 n.6.

based on "newly discovered evidence" and, therefore, defendant's September 18, 2015 motion for a mistrial was untimely because it was filed more than ten days after March 6, 2015. Further, the court stated that, even if the motion was timely, 4 V.S.A. § 962(a)(5) did not disqualify the juror from service because she had not served a term of her imprisonment in Vermont. Finally, the court concluded that defendant failed to demonstrate that he was prejudiced by the juror's inclusion on the panel.

¶ 10. On appeal, defendant raises three arguments. His first argument is jurisdictional: defendant contends that the trial court erred when it concluded that the motion for a new trial was untimely filed under Vermont Rule of Criminal Procedure 33. Defendant's second and third arguments are interrelated and directly address his contention that the felon-juror's inclusion on the jury warrants a new trial. He claims that, because the felon-juror served a period of supervised release for a federal felony under the District of Vermont's jurisdiction, she was statutorily disqualified from jury duty under 4 V.S.A. § 962(a)(5) and, as a result, a new trial should be ordered. If § 962(a)(5) does not apply to the juror, defendant argues that the mere presence of a felon-juror on the jury tainted his conviction; thus, the trial court improperly required him to demonstrate actual prejudice and further compounded this error by restricting his ability to question the juror on voir dire. We need not address the specifics of defendant's first claim because we conclude that defendant's second and third arguments do not establish that a new trial would likely produce a different result.

¶ 11. We review a trial court's decision to grant or deny a motion for a new trial for abuse of discretion. State v. Lawrence, 2013 VT 55, ¶ 10, 194 Vt. 315, 80 A.3d 58 (2013) ("Where the denial of a motion for a new trial is challenged, abuse of discretion must be shown." (quotation omitted)). Under Vermont Rule of Criminal Procedure 33, a motion for a new trial that does not rely on "newly discovered evidence" must be "made within 10 days after verdict or finding of guilty or within such further time as the court may fix during the 10-day period." If the motion

5

for a new trial is based on newly discovered evidence, the motion must be made within two years of the final judgment. V.R.Cr.P. 33. These time limits are jurisdictional; thus, "if a motion is not timely filed, the trial court lacks the power to consider it." State v. Sheppard, 155 Vt. 73, 77, 582 A.2d 116 (1990). Criminal Procedure Rule 33 promotes finality by maintaining this strict ten-day requirement in most cases, aside from the narrowly construed exception involving "newly discovered evidence."

¶ 12. Here, the court summarily concluded that defendant's motion for a new trial was not based on "newly discovered evidence" and, as a result, applied the ten-day rule. Defendant claims that the court incorrectly applied the strict ten-day time limit under Rule 33 because defendant's motion for new trial was preceded by a series of prior filings and hearings, all of which were initiated by his April 8, 2015 motion to voir dire the juror. By contrast, the State points us to State v. Sheppard and argues that, because Sheppard established a jurisdictional rule barring motions for a new trial based on juror bias from qualifying as "newly discovered evidence," this strict rule extends to motions relying on 4 V.S.A. § 962(a)(5). We need not address the intricacies of this argument here because, even if we concluded that the discovery post-trial of a statutorily disqualified juror qualifies as "newly discovered evidence," defendant cannot show that the new evidence would "likely lead to an acquittal . . . on retrial." State v. Charbonneau, 2011 VT 57, ¶ 17, 190 Vt. 81, 25 A.3d 553; see Reporter's Notes, V.R.Cr.P. 33 ("Both the Vermont and federal cases hold that to permit grant of a new trial, the new evidence . . . must appear likely to bring about an acquittal on a retrial.").

¶ 13. Most important, because the plain language of 4 V.S.A. § 962(a)(5) does not apply to the juror, defendant cannot rely on the statutory exclusion to demonstrate the likelihood of a different result in a new trial. When interpreting a statute "[w]e ordinarily rely on the plain meaning of the words to construe statutes because we presume that it shows the intent of the Legislature." State v. Papazoni, 159 Vt. 578, 580, 622 A.2d 501, 503 (1993). When the relevant

6

terms are not defined in the statute, as in this case, we may look to dictionary definitions to determine the plain and ordinary meaning of the language. See State v. Galanes, 2015 VT 80, ¶ 13, 199 Vt. 456, 124 A.3d 800.

¶ 14.    Under § 962(a), "[a] person shall be qualified for jury service if the person . . . (5) has not served a term of imprisonment in this state after conviction of a felony." The definition of "imprison" means "to put in or as if in prison" or to "confine." Imprison, Merriam-Webster https://www.merriam-webster.com/dictionary/imprison [https://perma.cc/DPL9-BXVS]; see also Imprisonment, Black's Law Dictionary (10th ed. 2014) ("The act of confining a person . . . ."). Thus, § 962(a)(5)'s plain language excludes felons who have served a period of confinement in Vermont.[3]    Further, the Legislature limited the statutory exclusion to felons who have been confined in this state, unlike similar statutes in many other states. See, e.g., Md. Code Ann., Cts. & Jud. Proc. § 8-103(b), (b)(4) (2006) ("An individual is not qualified for jury service if the individual . . . [h]as been convicted, in a federal or State court of record, of a crime punishable by imprisonment exceeding 6 months and received a sentence of imprisonment for more than 6 months . . . ."); S.D. Codified Laws § 16-13-10 (2006) ("Any person who has been convicted of a felony unless restored to civil rights is not eligible to serve as a juror."). Plainly, the Legislature concluded that a felony conviction would not adversely affect the impartiality and probity of a prospective juror or undermine the integrity of the trial—unless the prospective juror was imprisoned in this state after a felony conviction. See United States v. Foxworth, 599 F.2d 1, 4 (1st Cir. 1979) (concluding that statutory disqualification of felons "is intended to assure the 'probity' of the jury"); Rubio v. Superior Court, 593 P.2d 595, 600 (Cal. 1979) (en banc) (stating

---

[3] We do not address whether § 962(a)(5) also applies to inmates convicted in Vermont but confined in another state pursuant to an interstate agreement, but we do note that Vermont retains jurisdiction over those inmates. See 28 V.S.A. § 1604(c) ("Inmates confined in an institution pursuant to the terms of this [interstate] compact shall at all times be subject to the jurisdiction of the sending state . . . .").

7

that felons have "suffered the most severe form of condemnation that can be inflicted by the state" and, thus, "might well harbor a continuing resentment against 'the system' " and "an equally unthinking bias in favor of the defendant on trial, who is seen as a fellow underdog caught in its toils.").

¶ 15.    Here, the juror was convicted in Nevada federal court and imprisoned in Nevada. Although part of her post-release supervision occurred in Vermont, no part of her confinement happened in Vermont.   Moreover, her conviction, imprisonment, and post-arrest supervision occurred under federal jurisdiction rather than state jurisdiction.   Given these facts, the plain language of § 962(a)(5) did not disqualify the juror from service.

¶ 16.    We are not persuaded by defendant's claim that the juror's post-arrest supervision was "a continuation of her sentence" and, as a result, was "imprisonment" for the purposes of § 962(a)(5).  First, the statute does not say "sentence," but instead uses the word "imprisonment." These are clear words that the Legislature has employed in a distinct manner; for example, in 13 V.S.A. § 7031, the Legislature specified that a court's "sentence" may include "imprisonment" as well as probation or parole or other post-release supervision.  In other words, imprisonment may be a component of a sentence, but it is distinct from post-release supervision.  Similarly, the cases defendant relies on do not conflate imprisonment and post-release supervision, but instead distinguish imprisonment from the various types of post-release supervision.  For example, in Morrissey v. Brewer, the U.S. Supreme Court stated that, although a parolee has more limitations on his liberty than a regular citizen, his or her "condition is very different from that of confinement in a prison."  408 U.S. 471, 482 (1972); see also State v. Bogert, 2013 VT 13A, ¶ 10, 197 Vt. 610, 109 A.3d 883 (2014) (noting that, on "continuum of possible punishments," probation and other post-release supervision were farther away from punishment options involving confinement (quoting Griffin v. Wisconsin, 486 U.S. 868, 873 (1987)).  In short, the cases defendant cites lend support to our conclusion that, as used in § 962(a)(5), "imprisonment" means confinement in a

prison, and does not apply to the juror's post-release supervision in Vermont. Because § 962(a)(5) does not apply to the juror, defendant cannot rely on § 962(a)(5) to demonstrate that a new trial would result in an acquittal.[4] See Charbonneau, 2011 VT 57, ¶ 17 ("[T]he trial court must find that the newly discovered evidence will likely lead to an acquittal of the defendant on retrial.").

¶ 17. Similarly, the inclusion of a felon-juror does not by itself warrant a new trial, even if § 962(a)(5) does not apply, as defendant alternatively argues. As described above, defendant claims that the felon-juror's mere presence tainted the conviction, and thus, the court erred when it required defendant to establish that the felon-juror's inclusion actually prejudiced defendant and, further, that the court compounded this error by limiting the questions defendant could ask during the post-trial voir dire. We do not agree.

¶ 18. As an initial matter, an implicit conclusion can be drawn from § 962(a)(5) that felon status by itself is not sufficient to exclude a juror: the felon must also have been imprisoned in this state or the statute does not disqualify the felon from jury service. If we determined that, even though § 962(a)(5) does not disqualify the juror in this case, her mere presence on the jury

---

[4] We note that, even if 4 V.S.A. § 962(a)(5) did apply to the felon-juror, most jurisdictions still require defendants to demonstrate actual prejudice connected to the inclusion of a statutorily disqualified juror on the jury. See, e.g., United States v. Uribe, 890 F.2d 554, 562 (1st Cir.1989) (denying defendants' claim of entitlement to new trial because one juror was convicted felon by explaining that defendants did not otherwise demonstrate "plausible link between the predicate facts and the prejudice claimed"); Boyd v. State, 200 So. 3d 685, 697 (Fla. 2016) ("Rather, we hold—as have many other appellate courts throughout this nation—that a criminal defendant is not entitled to relief under such atypical circumstances absent a showing, based on legally sufficient evidence, of actual juror bias against the defendant. In other words, a person's disqualification from jury service by statute does not necessarily implicate a violation of a criminal defendant's constitutional rights if that person somehow served as one of said defendant's jurors."); State v. Cleary, 269 P.3d 367, 370 (Wash. 2012) ("The disqualification criterion [for convicted felons addressed] here is by statute not the state or federal constitution. The assignment of error does not then implicate constitutional rights." (citation omitted)). Thus, even if the felon-juror should have been excluded under 4 V.S.A. § 962(a)(5), defendant could not prove that a different result would be likely in a new trial because defendant conceded that he did not establish actual prejudice. See infra, ¶ 20.

automatically warranted a new trial, we would disregard this locational requirement imposed by the Legislature.

¶ 19.    Likewise, federal courts have concluded that "the Sixth Amendment guarantee of an impartial trial does not mandate a per se invalidation of every conviction reached by a jury that included a felon." United States v. Boney, 977 F.2d 624, 633 (D.C. Cir. 1992); see also United States v. Uribe, 890 F.2d 554, 562 (1st Cir. 1989) (noting right to exclude felon jurors is statutory right, not constitutional one); United States v. Humphreys, 982 F.2d 254, 261 (8th Cir. 1992) (agreeing with Boney court's repudiation of per se rule).  Instead of a per se rule, defendants must show that the juror was not impartial.  Boney, 977 F.2d at 624.  The type of proof required varies from court to court: some courts require a showing of actual prejudice, see Boney, 977 F.2d at 635, while others require proof that a juror dishonestly answered a material question and that a correct response to the question would have revealed possible bias and provided a valid basis to challenge the juror for cause.  See United States v. Sampson, 820 F. Supp. 2d 151, 171 (D. Mass. 2011) (setting forth five-part test).  This second standard does not require proof of actual or implied bias but instead focuses on whether a juror's " 'motives for concealing information' were those that 'affect a juror's impartiality,' and that the concealed information, when considered along with the motive for concealment and the circumstances of eventual disclosure, 'would have provided a valid basis for a challenge for cause.' " Id. at 174 (quoting McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984)).

¶ 20.    We need not determine which test should apply under these circumstances because defendant cannot provide the proof required under either standard.  First, defendant conceded that he did not establish actual prejudice during the post-trial voir dire hearing.  Instead, he argues that,

10

because the trial court limited his ability to question the juror,[5] he was unable to establish actual prejudice. But the trial court was itself constrained by the requirements of Vermont Rule of Evidence 606(b), which strictly limits inquiry into the jury's deliberations. See V.R.E. 606(b) ("[A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations . . . ."). Moreover, within the confines of Rule 606(b), the trial court has broad discretion to determine the exact procedures for questioning jurors as long as the questions are "sufficiently detailed to permit the judge to determine whether any prejudice is likely to result." United States v. Butler, 822 F.2d 1191, 1196 (D.C. Cir. 1987) (analyzing similar procedural rule). The court in this case permitted defendant to question the juror about her prior conviction and its possible connection to the juror's impartiality. This was a proper exercise of the court's discretion within the restrictions of Rule 606(b). Despite this additional voir dire, defendant conceded that he did not establish actual prejudice; as a result, defendant cannot provide the proof necessary to satisfy the first standard described above.

¶ 21. Similarly, defendant cannot make the showing necessary to satisfy the second test that courts use to determine whether a juror was impartial. One of the test's prongs requires proof that the juror's "inaccurate response was dishonest rather than merely mistaken." Sampson, 820 F. Supp. 2d at 172. This requirement reflects the distinction between an innocent error, which does not "itself raise a question of whether an individual is able to decide a case based solely on the evidence," and a knowingly dishonest answer, which raises immediate questions about the

---

[5] Specifically, the trial court stated:

> What I want counsel to steer clear of, though, are any inquiries into the substance of the jury's actual deliberations when they got the case because that's sacred ground. You are free, I think, under the case law to inquire of the juror if there—if, assuming there was a prior conviction, if that conviction played any role in compromising their ability to objectively and impartially receive the evidence and deliberate.

11

juror's impartiality. Id. In this case, the juror's testimony during the voir dire hearing established that she did not understand the question on the questionnaire and that her incorrect answer to the question was an honest mistake. This testimony fails to establish the requisite dishonesty.

¶ 22. The trial court did not abuse its discretion when it denied defendant's motion for a new trial under Criminal Procedure Rule 33 because defendant cannot establish that the juror's presence on the jury should warrant a new trial.

## II. Sufficiency of the Evidence

¶ 23. Defendant also claims on appeal that the evidence was insufficient to show that defendant knowingly possessed a depressant or stimulant in violation of 18 V.S.A. § 4234(a)(1). We conclude that the evidence was sufficient to convince the jury that the State proved the elements of § 4234(a)(1) beyond a reasonable doubt.

¶ 24. At trial, the evidence established that, while patrolling downtown Burlington in an unmarked police car, a plainclothes officer observed a man who "seemed suspicious" pacing in the parking lot of a convenience store. The officer concluded that the man was waiting for someone. Because of his suspicions, the officer drove by the parking lot several more times and observed the man pacing each time until, on the officer's fourth pass, the man was no longer in the parking lot. The officer parked his car and exited to look for the man.

¶ 25. The officer found the man in the driver's seat of a gray car and, when the man opened the driver's door, the officer smelled marijuana and observed a plastic bag of marijuana on the car's console. Defendant was in the passenger seat of the car with a backpack between his knees. The man in the driver's seat consented to a search of the car; prior to conducting the search, the officer followed procedure and called an officer for backup.

¶ 26. After the backup officer appeared, the first officer questioned defendant. The officer asked defendant about his relationship with the man, and defendant explained that the man was a friend who had promised to give him a ride home. The officer then asked defendant if his

12

backpack contained marijuana, and defendant said no. In response, the officer asked to search defendant's backpack. Defendant initially resisted and asked the officer to get a warrant but ultimately consented to the officer searching his backpack. While searching defendant's backpack, the officer found two vacuum-sealed jars containing marijuana and a pill bottle with two different colored pills: red pills and blue pills. The red pills were loose in the bottle, and the blue pills were in a plastic bag stuffed in the bottle. The bottle's prescription label described the contents as diazepam, a depressant; the prescription was made out to defendant's brother, not defendant. Later forensics tests confirmed that the blue pills were diazepam and identified the red pills as methylphenidate, a stimulant.

¶ 27. After discovering the bottle, the officer questioned defendant about the pills. Defendant said that the diazepam was for his brother and that he forgot to give the bottle to him. According to the officer's testimony, defendant did not explain why the red pills—the methylphenidate—were in the bottle.

¶ 28. Defendant disputed the officer's account at trial and, in his testimony, stated that he told the officer that he found the red pills in the bar where he works as a member of the security staff. He further testified that he took the red pills home intending to look them up; according to defendant, this was a regular practice among the security staff because, to maintain their patrons' safety, security tried to educate themselves about drugs being used in the bar. He also explained that the security staff did not contact the police when they found drugs, because "it [was] not [their] job to get people in trouble"; instead, the staff either tried to identify the substance or flushed it down the toilet.

¶ 29. Pursuant to Vermont Rule of Criminal Procedure 29, defendant made two oral motions for acquittal: one after the State's case and one after the close of all the evidence. In both, he alleged that the State did not produce sufficient evidence to demonstrate that defendant knowingly possessed a depressant or stimulant under 18 V.S.A. § 4234(a)(1). In support,

13

defendant pointed out that the diazepam pills were in a prescription bottle made out to his brother and that, as he testified, he did not know that the red pills were methylphenidate. By contrast, the State argued that the evidence taken together—defendant's possession of his backpack along with the mixture of different pills in a single bottle and the pills' packaging (in a plastic bag consistent with practices for selling drugs)—was sufficient to demonstrate defendant knowingly possessed the pills. The trial court agreed with the State, specifically concluding that the jury could determine from the circumstances that defendant "knew that these were regulated substances and that they were in his possession." We agree.

¶ 30.    "We will affirm a trial court's denial of a motion for acquittal where, viewing the evidence in the light most favorable to the State, there is sufficient evidence to convince a reasonable trier of fact that all the elements of the crime have been proven beyond a reasonable doubt." State v. McAllister, 2008 VT 3, ¶ 13, 183 Vt. 126, 945 A.2d 863 (quotation omitted). Although evidence that is dependent on conjecture or that leaves guilt uncertain is insufficient, the jury may draw rational inferences from the circumstantial evidence "to determine whether disputed ultimate facts occurred." Id. (quotation omitted). "[A]ll of the evidence, in sum, must produce more than a mere suspicion of guilt." Id. A court shall grant the motion for acquittal "only if the prosecution has failed to put forth any evidence to substantiate a jury verdict." Id. (quotation omitted).

¶ 31.    To violate 18 V.S.A. § 4234(a)(1), a person must "knowingly and unlawfully possess[] a depressant, stimulant, or narcotic drug." As described above, defendant's backpack contained the pill bottle with two types of pills. This was sufficient for a jury to reasonably determine that defendant exercised dominion and control of the pills and, as result, possessed the pills under § 4234(a)(1). See State v. Benneig, 146 Vt. 391, 395, 505 A.2d 1192, 1195 (1985) (defining possession as "dominion or control" over contraband item). Likewise, the pills' packaging, the mixture of pills in a single bottle, the circumstances surrounding defendant's

interaction with the man in the driver's seat, and defendant's evasiveness when confronted by the officer provided sufficient evidence for the jury to rationally infer that defendant knew the pills were regulated drugs and that he unlawfully possessed the pills. See State v. Kerr, 143 Vt. 597, 604, 470 A.2d 670, 673 (1983) (concluding that circumstantial evidence "constitute[ed] sufficient evidence of guilty knowledge to sustain the verdict").

¶ 32. We are not persuaded by defendant's arguments, which rely heavily on his testimony; for example, he points out that he testified that he had no idea that the red pills were methylphenidate. As described above, we review the evidence in the light most favorable to the State as the prevailing party and exclude all modifying evidence. McAllister, 2008 VT 3, ¶ 13. The countervailing testimony offered by defendant is exactly the sort of evidence we must exclude. See State v. Gibney, 2003 VT 26, ¶ 14, 175 Vt. 180, 825 A.2d 32 ("By modifying evidence, we mean exculpatory evidence introduced by defendant, such as countervailing testimony."). By ignoring modifying evidence, we ensure that credibility determinations remain the province of the jury, not this Court. Id. In this case, the jury weighed the statements of the officer against defendant's testimony and considered the other circumstantial evidence described above when it determined that defendant violated § 4234(a)(1). There was sufficient evidence to make this determination.

Affirmed.

FOR THE COURT:

_____

Associate Justice

15